OPPENHEIM v. UNITED STATES. ROGERS v. SAME. MURPHY v. SAME.

(Circuit Court of Appeals, Second Circuit. April 17, 1917.)

Nos. 98, 99, 109.

1. CRIMINAL LAW ☞622(1)—TRIAL—SEPARATE TRIALS OF CODEFENDANTS.
    Whether certain defendants should be tried separately from a codefendant as requested by them was a matter of discretion with the trial judge.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1380, 1382, 1383, 1388.]

2. CRIMINAL LAW ☞1159(2)—APPEAL—REVIEW—QUESTIONS OF FACT.
    The jury's findings of fact are binding upon the Circuit Court of Appeals when there is any evidence to support them.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3075.]

3. CONSPIRACY ☞48—CRIMINAL PROSECUTIONS—INSTRUCTIONS.
    On a trial for conspiracy to abstract the funds of a national bank, instructions that defendants could not be found guilty if they believed that money or funds received by them from B., a clerk in the bank, was his property, and that they could not be convicted if they did not know it

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    241 F.—40

was the property of the bank, were properly refused, as they were guilty if they conspired to get the moneys of the bank and committed an act in furtherance of such conspiracy, though they believed the moneys received were B.'s.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 108–111.]

4. CRIMINAL LAW ⏠776(5)—INSTRUCTIONS—REASONABLE DOUBT—CHARACTER EVIDENCE.

Instructions that evidence of good character might, when a reasonable doubt would not otherwise exist, create a reasonable doubt if the evidence was nearly evenly balanced, that substantial evidence of good character, making it improbable that defendant would commit the offense, might, when added to that already adduced by defendant, or in connection with the weakness of that produced by the government, create a reasonable doubt, but that when evidence was clear, backed up by documents and excluded every hypothesis except that of guilt, the jury could not avoid responsibility upon the ground that defendant might not be guilty, were erroneous, as they told the jury that evidence of good character would only create a reasonable doubt if the evidence without it was evenly balanced.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1841.]

5. CRIMINAL LAW ⏠1038(1), 1056(1)—APPEAL—RESERVATION OF GROUNDS OF REVIEW—OBJECTIONS AND EXCEPTIONS.

Under rule 11 for the Second circuit, providing that errors not assigned according thereto will be disregarded, but that the court at its option may notice a plain error not assigned, the claim that the court's charge was so one-sided as to amount to a summing up on behalf of the government may be considered, though no objection or exception thereto was taken.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2646, 2668, 2670.]

6. CRIMINAL LAW ⏠762(2)—INSTRUCTIONS—ARGUMENTATIVE INSTRUCTIONS.

While in the federal courts the judge may express his own opinion on the facts, provided he instructs the jury that they are the sole judges, he has no right to persuade the jury as to the facts, or argue the case for either side.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731, 1758.]

Hough, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Northern District of New York.

Baron Eugene Francois Ernest Oppenheim, Howard J. Rogers, and Richard Murphy were convicted of conspiracy (228 Fed. 220), and they bring error.   Reversed.

See, also, 226 Fed. 512; 224 Fed. 554.

Thayer & Van Slyke, of New York City (W. C. Van Slyke, of New York City, of counsel for plaintiff in error Oppenheim, and Aaron C. Thayer, of New York City, of counsel for plaintiff in error Rogers), for plaintiffs in error Oppenheim and Rogers.

Wrisley Brown, Sp. Asst. Atty. Gen., and Frank J. Cregg, Asst. U. S. Atty., of Syracuse, N. Y., for the United States.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge.   The defendants, together with W. T. Brice, were indicted under the first count for conspiracy to commit an offense against the United States under section 37 of the Crim-

⏠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

inal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. 1916, § 10201]), viz. to abstract and misapply the funds of the First National Bank of Amsterdam, and under 460 following counts with the crime of aiding and abetting Brice to abstract and misapply the funds of the said bank, under section 332 of the Criminal Code (Comp. St. 1916, § 10506), and section 5209, U. S. Rev. Stat. (Comp. St. 1916, § 9772). The government relied at the trial on only 200 of these counts.

The defendant Brice pleaded guilty to the conspiracy count, was the chief witness of the government and is a self-confessed thief. He was a clerk of the bank with very general duties, and, though not an officer, nor even cashier or teller, was apparently the most active person in its daily management. The total amount of his thefts was some $170,000, and of these moneys the defendant Rogers received $12,000, the defendant Oppenheim $5,000, and the corporation of Oppenheim & Co., $18,531.48, or $35,531.48 in all. The defendant Murphy, who represented Brice in certain realty operations in New York City, received about $33,000.

The trial occupied some seven weeks and the record on appeal consists of 4,211 printed pages. The jury found all the defendants guilty upon all the counts in issue, and each defendant sued out a writ of error.

[1] The defendants Oppenheim and Rogers asked to be tried separately from Murphy. This was a matter of discretion with the trial judge, and we cannot say his refusal was an abuse of discretion.

[2] The jury's findings of fact are binding upon us when there is any evidence to support them, and we think there was evidence both as to the conspiracy count and the aiding and abetting counts. We have therefore only to inquire in the first instance whether exceptions taken to the rulings of the court as matter of law were or were not good.

[3] The first exception is to the refusal of the court to charge the following requests:

"These defendants cannot be found guilty of conspiracy set forth in the first count in this indictment if these defendants believed that the money or funds that they received, as proven in this case were the property of William T. Brice."

"These defendants cannot be found guilty of conspiracy as set forth in the first count of the indictment if they did not know that the money and funds proven in this case to have been received by them was the property of the First National Bank of Amsterdam."

Of course the question whether the defendants knew the moneys they were receiving from Brice belonged to the bank was of the first importance. Still, if they had conspired to get the moneys of the bank and had committed an overt act in furtherance of such conspiracy, they would be guilty even if they believed the moneys received from Brice were his own. This exception is not sustained.

[4] The defendants excepted to the charge of the court on the question of the effect to be given to evidence of defendants' good character. The court charged:

"Evidence of good character may, in certain cases, when a reasonable doubt would not otherwise exist, create a reasonable doubt and turn the scales, so

to speak, if the evidence is nearly evenly balanced, and the jury otherwise might· not have a reasonable doubt. Substantial evidence of good character making it improbable that the defendant would commit the offense charged may when added to that already adduced by the defendant or defendants, or in connection with the weakness· and indefiniteness, or uncertainty, or unreliability of that produced by the government, create a reasonable doubt. But, gentlemen, when the evidence is clear, satisfactory, and convincing, backed up by letters written and documents made by the defendants and witnesses at the time of the happening of the transactions, and at the time of the occurrence to which they relate, and which are in question and excludes every hypothesis except that of guilt, and is consistent with guilt only, then a jury should not avoid responsibility upon the ground or theory that the defendant may not be guilty."

And the defendants' request and the court's answer on the same subject were as follows:

" 'The evidence of the previous good character of the defendants may of itself be sufficient to create a reasonable doubt.' I have already charged fully on that. Evidence of previous good character may, in a doubtful case, where it hangs in the balance, and the jury will not otherwise have a reasonable doubt, come in, and the jury would say that a man of that character and stamp would not commit an offense, and, the evidence being doubtful, evenly balanced, they would give him the benefit of that doubt."

We think this was error. The Supreme Court in Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, has held that evidence of good·character may itself create a reasonable doubt when without it there would on the other evidence be no reasonable doubt, whereas the trial judge held that evidence of good character would only create a reasonable doubt if the evidence without it was evenly balanced. As in that case the jury must have a reasonable doubt, evidence of good character would be quite unnecessary.

[5] The defendants finally urged that the charge of the court was so one-sided as to amount to a summing up on behalf of the government. Examination of the charge constrains us to find that this criticism is just. Although no objection or exception was' taken to it, we may consider it as a plain error under rule 11 of this court. Morse v. United States, 174 Fed. 539, 98 C. C.·A. 321, 20 Ann. Cas. 938. See, also, Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 ·L. Ed. 465, 15 Ann. Cas. 392; Mark Yick Hee v. United States, 223 Fed. 732, 139 C. C. A. 262.

The record on appeal contains the summing up of counsel; that for Oppenheim and ·Rogers takes up 55 printed pages, for Murphy 57 pages, ·for the United States, 83 pages. It would not seem necessary for the court to have taken up much time in charging the jury after this very full discussion by counsel, but the charge, including answers to requests, takes up 78 pages. A supplemental charge after the jury returned for instructions October 26 at 12:15 a. m. takes up 4 pages more:

"The Foreman: Your honor, we would like some instructions. We would like to know if a verdict can be brought on the first count or any other count against one or more defendants and not against all the defendants.

"The Court: On the first count you can say guilty as to any two, but not of course as against one, because—no, the charge is conspiracy by Brice, Murphy, Rogers, and Oppenheim. Of course it takes two to conspire, so that on

the first count it could be against one of these defendants on trial, or two, or all. Is not that correct, Mr. Brown?

"Mr. Brown: That is my understanding of the law, your honor."

They returned again at 5:23 p. m., after 17 hours:

"The Court: Well, gentlemen, is there anything the court can do? Any further charge or instructions?

"The Foreman: We have looked the evidence over and worked hard over it and seem to be divided, and it does not look as if we could agree.

"The Court: Well, on the questions of law—divided on the questions of law, legal questions?

"The Foreman: On questions of evidence.

"The Court: Anything I could call your attention to, gentlemen, in regard to the evidence? Is it in regard to the weight of the evidence or what the evidence is?

"The Foreman: We would like to know the time when—the evidence as to when Howard J. Rogers first knew that there had been money appropriated from the bank, and also Baron Oppenheim."

The court then gave a second supplemental charge, taking up 18 more printed pages. The fact that the defendants took no exception to the charge as one-sided and partial is quite natural, and did no harm. Counsel had a right to expect from time to time that the court would give a statement of the defendants' defense. It is a very delicate operation to interrupt the court in his charge on the ground that it is one-sided, and after the charge has been rendered, an exception will be useless for practical purposes. Apparently the defendants' counsel intended to take such an exception, but was not allowed to do so.

"Mr. Costello: If your honor please, I desire to except to all that you have stated here for the reason—

"The Court: Never mind your reasons. You may have an exception to all I have said."

[6] It is of course impossible to set out this long charge of 100 pages in extenso, but in our opinion it constitutes a detailed argument on behalf of the government, making almost no reference to the claims of the defense. We fully recognize that a judge of the federal courts may go so far as to express his own opinion on the facts, provided he instructs the jury that they are the sole judges, but we do not think he has a right to persuade the jury as to the facts or to argue the case for either side. There is abundant authority to this effect. Hicks v. United States, 150 U. S. 442, 450–453, 14 Sup. Ct. 144, 37 L. Ed. 1137; Starr v. United States, 153 U. S. 614, 624–626, 14 Sup. Ct. 919, 38 L. Ed. 841; Allison v. United States, 160 U. S. 203, 207–211, 16 Sup. Ct. 252, 40 L. Ed. 395; Rudd v. United States, 173 Fed. 912, 97 C. C. A. 462. The words of the judge's charge are the last words and the most weighty words that are dropped into the minds of the jury before they come to their verdict, and it is of the utmost importance that they should be calm and impartial. Almost the last words of this charge were:

"In all criminal cases, with possible rare exceptions, some one person or more is more or less disgraced and in most instances sorrow is brought to some home; but this consideration is not the one or ones upon which jurors have a right to base a verdict, in whole or part, or one that should in any degree affect the juror in making up his verdict. You have taken a solemn oath to decide this case upon the evidence under the law as it is declared to

you by the court. To do otherwise is to violate your oath and bring the administration of the law into contempt. If conviction is had it is for the court to impose sentence, tempering justice with mercy, even to the suspension of sentence, while executive clemency is with the President, who wields the pardoning power."

And in the supplemental charge the judge returned to the same subject, saying:

"As I told you before, sympathy, passion, prejudice, and all that is not to cut any figure in the case. The pardoning power is with the President. If you believe and find the defendants guilty or a defendant guilty, leniency in pronouncing sentence is with the court; and I think it is proper to say to you, so that there should be no dissension between you about that, there is a large number of counts in the indictment. Of course the court would have the power, if you found the defendants guilty on the large number of counts, to add up the sentences of one to follow the other; but discharge that from your mind. Leave that to the discretion and good judgment of the court. The court will not feel like making a life sentence or visiting vengeance on anybody. Do not let that cut any figure at all in your deliberations, gentlemen."

After a further deliberation of several hours the jury returned at 10:10 p. m. and rendered their verdict as above.

The defendants may be all the government contends that they are, but, if so, they must be convicted in accordance with the rules of law.

The judgment is reversed.

HOUGH, Circuit Judge (concurring). In the result announced by the court I concur, upon the ground that the instructions of the trial judge regarding the force and function of character evidence were such as to require reversal under ruling cases, of which Edgington v. United States, supra, is enough for this court. Nor can it be urged in excuse that such error was not prejudicial. Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471, 28 L. Ed. 62; Mexia v. Oliver, 148 U. S. 664, 13 Sup. Ct. 754, 37 L. Ed. 602; Boston, etc., Co. v. O'Reilly, 158 U. S. at 337, 15 Sup. Ct. 830, 39 L. Ed. 1006.

The charge on this point, substantially followed, overruled New York cases; it was almost in the words of an instruction disapproved in Remsen v. People, 43 N. Y. 6, which upset former practice in this state. See Wagner v. People, 54 Barb. (N. Y.) 367, affirmed *41 N. Y. 684; also People v. Hammill, 2 Parker Cr. R. (N. Y.) 223; cf. People v. Conrow, 200 N. Y. 356, 93 N. E. 943.

With the rest of the majority opinion I cannot agree. The so-called bill of exceptions herein consisted of the stenographer's minutes, including all the remarks of counsel. From this history of trial it is not only evident that Brice was a confessed thief, but that the jury were fully warranted in believing (as they must have done) that these plaintiffs in error knew it, and used that knowledge to squeeze money for their own purposes out of him, knowing by his own statements that he had no means of producing the same other than dishonestly and from the bank.

It is true that the trial court, in common parlance, charged "against the defendants." No other charge could have consisted with the facts, and no objection or exception was taken to that charge. It is now said that the nature and merits of the defense were not sufficiently

dwelt upon. If there had been merit in the defense, it was a small matter to call the court's attention to what had been omitted. To reverse on such ground, without an objection duly taken, is stretching a rule of court, which says no more than that the court, "at its option, may notice a plain error not assigned." The rule does not apply to nonexistent objections and exceptions; while generosity to defendants in criminal cases has never been more widely stated than that error will be sometimes noticed in such causes, when "the question was not properly raised by objection and exception." Crawford v. United States, 212 U. S. at 194, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392. Here it was never raised at all, and the same argument is made at this bar, as was adverted to in Drumm, etc., Co. v. Edmisson, 208 U. S. 540, 28 Sup. Ct. 367, 52 L. Ed. 606, thus:

"Plaintiff in error complained of certain remarks by the court which were said to be prejudicial. No objection was taken to the remarks complained of. Counsel now say that to have made objection would have made a bad matter worse. We cannot accept the excuse. We do not think the remarks had the misleading strength that is attributed to them; but at any rate it was the duty of counsel to object to them, and if then the court made matters worse its action would be subject to review."

"Judex damnatur et nocens absolvitur" is a rewriting of the Roman maxim, descriptive of not a few modern decisions. The present record should furnish no opportunity for its application.