### LINN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

#### No. 198.

1. CRIMINAL LAW ⟨⟩1156(4)—REVIEW—DISCRETION—NEW TRIAL.

   Where defendant insisted, on motion for new trial, that he did not have a fair trial, and that one of the jurors had knowledge of the facts of the case before he was chosen, and the trial court, in disposing of the motion, heard affidavits, etc., the denial of the motion cannot be reviewed on error.

2. CRIMINAL LAW ⟨⟩1129(1)—ASSIGNMENTS OF ERROR.

   Where the denial of a motion for new trial on the ground that defendant did not have a fair trial was not included in assignments of error, and was no part of the bill of exceptions, that question cannot be reviewed.

3. SEARCHES AND SEIZURES ⟨⟩7—CONSTITUTIONAL PROVISIONS.

   Despite Const. Amend. 4; prohibiting unreasonable searches and seizures, and Amendment 5, declaring that no one in a criminal case shall be compelled to testify against himself, a corporation may be required to produce its books and papers, though they tend to incriminate an officer thereof.

4. SEARCHES AND SEIZURES ⟨⟩7—PRODUCTION OF EVIDENCE—UNREASONABLE SEARCH.

   Where papers and books of a corporation of which defendant was an officer were produced before the grand jury, and later returned to defend-

ant's counsel, defendant cannot, having been given an opportunity to remove his own private papers, object to the use of such records produced in obedience to a subpœna duces tecum; there being no unreasonable search, etc., in violation of Const. Amends. 4, 5.

5. CRIMINAL LAW ⊝776(2)—INSTRUCTIONS—CHARACTER.

In a criminal prosecution, a charge that the jury should consider all the testimony, including the testimony of character witnesses, and should take it into consideration, and give it such weight as the jury might think it ought to have as bearing on the question of guilt or innocence, is not erroneous.

6. CRIMINAL LAW ⊝776(5)—INSTRUCTIONS—CHARACTER.

Requests that good character is in itself sufficient to raise a reasonable doubt, whereas, without it, no reasonable doubt would exist, or that character is in itself enough to raise a reasonable doubt, etc., are erroneous, in omitting the word "good," and in stating too broadly the rule that evidence of good character may generate reasonable doubt.

7. CRIMINAL LAW ⊝1122(5)—RECORD—INSTRUCTIONS.

Requests to charge, as found in the stenographer's minutes, cannot be considered on writ of error, where not embodied in the record and the assignments of error.

8. CRIMINAL LAW ⊝826—TIME FOR REQUESTING INSTRUCTIONS.

In the Southern district of New York it is the custom not to refuse requests after the charge has been delivered, but requests at that time cannot receive the careful attention they would receive if presented at the close of the evidence, and the trial judge should not be held to the same degree of accountability for erroneously refusing a request then presented as he must be for one presented at a more appropriate time.

9. CRIMINAL LAW ⊝826—TRIAL—REQUESTS—PRESENTATION.

It is within the province of the District Court to request counsel to present their requests to charge at or before close of the evidence, and before argument, and to announce that he will not entertain requests not made in apt time.

10. CRIMINAL LAW ⊝1153(4)—REVIEW—DISCRETION—LEADING QUESTIONS.

The propriety of leading questions is so largely a matter of discretion, and depends so much on the circumstances of each case, that it is unwise for an appellate tribunal to review the act of the trial court in allowing leading questions.

11. CRIMINAL LAW ⊝1186(4)—APPEAL—REVERSAL—TRIVIAL ERROR.

Prejudice will not be presumed from trivial errors, and in order to justify reversal, even in a criminal case, it must appear that the error was substantial.

12. CRIMINAL LAW ⊝1091(1)—"BILL OF EXCEPTIONS"—WHAT CONSTITUTES.

A "bill of exceptions" is a written statement of objections to the decision of a court upon a point of law, made by a party to the cause, and properly certified; and a stenographic transcript of the entire proceedings of a criminal trial, including the colloquies of counsel, etc., is not a bill of exceptions, and should not be allowed as such.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Exceptions.]

In Error to the District Court of the United States for the Southern District of New York.

Forrester A. Linn and another were convicted of violating Criminal Code, § 215, and the named defendant brings error. Affirmed.

The plaintiff in error, hereafter referred to as the defendant, was indicted for a violation of section 215 of the federal criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1916, § 10385]). The indictment charged that

the defendant, together with Joseph C. Lynch and Mason G. Worth, had unlawfully, willfully, knowingly, and feloniously devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises from certain persons named and unnamed in the indictment, who desired to rent rooms and apartments, and who for that purpose advertised in the daily newspapers in and about the city of New York. The case was brought to trial against defendants Linn and Lynch; the defendant Worth having died after indictment and prior to the trial. The false and fraudulent pretenses and representations which were alleged to have been made were set out at length in the indictment. The defendants were alleged to have carried on their operations under the name of the Reliance Leasing Company, Incorporated. The jury returned a verdict against Linn and Lynch. The former was sentenced to a term of three years' imprisonment and Lynch to two. Each sued out writs of error, but Lynch has withdrawn his and is now serving his sentence.

M. Michael Edelstein, of New York City, for plaintiff in error.

Francis G. Caffey, U. S. Atty., and Frank M. Roosa, Asst. U. S. Atty., both of New York City.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). [1] The defendant insists that he did not have a fair trial, and that one of the jurors had knowledge of the facts of the case before he was chosen as a juror. The allegation is that it was discovered after the trial was concluded that the wife of one of the jurors had herself been a client of the Reliance Leasing Company, having registered with it on June 28, 1915, for a period of six months, paying to it the sum of $15.

The trial began on February 21, 1917. The facts were brought to the attention of the trial court upon a motion for a new trial. At that time affidavits of the juror involved, and of his wife, were presented to the court. His affidavit stated that at the time he became a juror he had no knowledge that his wife had had any transaction with any person representing the Reliance Leasing Company, and that he did not know of it until some time after the trial was concluded; that during the trial he had not discussed the case with her, except to say that he was sitting as a juror in a case and regretted that it was taking so much of his time and causing him so much delay in his business; that he might have stated to her he was sitting in a mail fraud case, but that he had no recollection of that; that he was organizing a new company, and that by reason thereof he rarely returned home until about 10 o'clock in the evening; that the organization of the company was of such vital importance to him and his wife that neither of them had any interest in the case; that the first time he discussed the case with his wife was some ten days or two weeks after the trial, when a cartoon appeared in an evening paper which referred to the Reliance Leasing Company. The affidavit of the wife was to the same effect. The motion for a new trial having been denied, this court is not at liberty to review the matter. The law is so well established that the action of the trial court in refusing a new trial cannot be reviewed in this court on writ of error that no citation of the authorities is necessary.

The cases of Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50,

36 L. Ed. 917, and McDonald v. Pless, 238 U. S. 264, 35 Sup. Ct. 783, 59 L. Ed. 1300, do not assert a contrary doctrine. What the court held in the first of these cases was that on a motion for a new trial the decision of the District Court excluding certain affidavits of jurors was reversible error. In the latter case on a motion for a new trial one of the jurors was sworn as a witness to testify concerning certain matters transpiring in the jury room, and the question was whether a juror could impeach his own verdict. The two cases referred to simply show that the action of the trial judge in admitting or excluding affidavits presented in connection with a motion for a new trial may be considered on writ of error. But that is a very different matter from reviewing the discretion of the trial judge in granting or refusing a new trial. In the case at bar the affidavits were not excluded.

[2] But there is another and equally conclusive reason why this court cannot consider the objection raised, and that is that it is not included in the assignment of errors, and it is no part of the bill of exceptions.

[3, 4] The defendant also alleges that his constitutional rights were violated by the admission in evidence of papers produced under subpœna from the files of his corporation, the Reliance Leasing Company. He relies upon the Fourth Amendment of the Constitution, which provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

He also relies upon the Fifth Amendment, which provides in part as follows:

"Nor shall he be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law. * * *"

The papers and records which were admitted in evidence were produced in obedience to a grand jury subpœna duly served upon an employé who was in sole charge of the office of the corporation at the time such service was made. Later the counsel for defendant requested the return of the papers, and they were returned by the United States attorney, and a receipt was signed by the defendant's counsel, which states that the papers belonged to the Reliance Leasing Company. A subpœna duces tecum, before the beginning of the trial, was served upon the defendant, who was the president of the corporation, requiring him to produce the papers in court, and they were so produced. The law is now well established that a corporation is not privileged from the production of its books and papers, even though they tend to incriminate an officer thereof. Johnson v. United States, 228 U. S. 457, 33 Sup. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263; Grant v. United States, 227 U. S. 74, 33 Sup. Ct. 190, 57 L. Ed. 423; Wheeler v. United States, 226 U. S. 478, 33 Sup. Ct. 158, 57 L. Ed. 309; Wilson v. United States, 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558.

The trial judge advised the counsel for the defendant to examine all the papers that came from the office of the corporation and find whether any of them were the exclusive property of the defendant, and plenty of time was afforded him for the examination. None of the personal papers of defendant were either offered or received in evidence. If papers were originally taken from the office of the corporation without authority of law, they were returned upon demand being made, and if they had not been it would have been the duty of the court upon application made to it to have caused their return. Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. That question is not now involved, the papers having been voluntarily returned. But counsel urged upon us at the argument that this case should be governed by the principle applied by this court in Flagg v. United States, 233 Fed. 481, 147 C. C. A. 367 (1916). In that case, as in this, the defendant was indicted for devising a scheme to defraud and using the mails in furtherance thereof; and in that case, as in this, the books and papers at the accused's place of business were seized and taken to the federal building, where they were examined by the federal authorities, who ultimately, upon demand having been made, returned them to his office. We held in that case that a conviction based upon evidence procured from the books and papers so taken without pretense of legal authority could not be sustained, and we placed our decision upon the broad ground that the constitutional rights of the defendant were violated by the unlawful seizure of his books and papers by the officers and agents of the United States, acting without warrant or pretense of legal authority. The wrong done in the seizure of the books was not cured by the idle ceremony of returning them after the authorities of the United States had obtained their desired information.

The similarity of the two cases has been noted. It remains simply to point out the dissimilarity between the two cases, a dissimilarity so great as to make it impossible to apply the principle involved in that case to the facts of this one. The books and papers seized in the Flagg Case were the private books and papers of an individual. The books and papers in this case were the books and papers of a corporation. While a person is privileged from producing his books in a prosecution against himself, a corporation is not privileged from producing its papers and books, even though they incriminate the officer who produces them. The distinction is clearly pointed out in Wilson v. United States, supra.

[5, 6] It is assigned for error that the trial judge erred in denying the request of the defendant to charge that good character in itself is sufficient to raise a reasonable doubt, whereas without it no reasonable doubt would exist. In his charge the judge had instructed the jury as follows:

"When I say that you should consider all the testimony in the case, that included the testimony of the witnesses who were called as character witnesses, and that you will take into consideration and give it such weight as you think it ought to have in the case as bearing upon the guilt or innocence of the defendants."

We cannot say that the instruction as given was error. Whether it was error to decline to give the instruction as asked is quite another matter. The counsel for defendant did not present his requests to charge until after the conclusion of the charge, and the jury had been told that they might take the case. Then counsel stated that he had some requests, and the judge remarked that it was pretty late to request them. He added:

"If you have anything in writing, let me have it, although that is not the rule (presenting after the charge) that prevails anywhere. Requests that are to be presented should be presented in time, in order that they may be examined. From such a hasty examination as I have been able to make, I think the requests which ought to be given have been embodied in the general charge."

Counsel again stated that he requested the court to charge that:

"Character is in itself sufficient to raise a reasonable doubt, whereas without it no reasonable doubt would exist."

And the judge replied:

"I have charged the jury fully on that subject."

The last request, which omitted the word "good," clearly was not in proper form. As it was first made, however, we cannot regard it as proper. To have given it as requested would have required the jury to find that evidence of good character was in itself enough to raise a reasonable doubt. This, of course, cannot be true, for, if it were, no defendant could be convicted whose character was good.

The Supreme Court in Edington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, held that evidence of good character may itself create a reasonable doubt, when without it there would on the other evidence be no reasonable doubt. The court in that case stated that "the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing." To say that evidence of good character "*may* generate a reasonable doubt" is one thing. To say, as the trial judge was asked in this case to charge, that good character in itself "*is* sufficient to raise a reasonable doubt" is a very different proposition indeed, and the Supreme Court has certainly sanctioned no such doctrine.

[7] We have considered the above request to charge as we find it in the stenographer's minutes and as it is stated in the twenty-first assignment of error. Under the fifth request to charge it is stated in a manner materially different. It there reads:

"Good character, when considered in connection with the other evidence of the case, *may* generate a reasonable doubt."

We are, however, obliged to ignore the request as thus stated, as it is not so embodied in the record and in the assignments of error. For the same reason we are obliged to ignore the sixth request to charge, reading:

251 F.—31

"Good character alone may create a reasonable doubt, although without it the other evidence may be convincing."

[8] It has been remarked that the requests to charge were not made until after the jury had been instructed. Requests to charge should be made in proper time, and if so made the general rule in many jurisdictions is that error cannot be assigned to a refusal to give them, whether made too late or made prematurely. In most jurisdictions the time when such requests are to be preferred is regulated either by statute or by rules of court. In the Seventh circuit the Circuit Court of Appeals, in City of Chicago v. Le Moyne, 119 Fed. 662, 669, 56 C. C. A. 278, 285, commenting on requests to charge presented after the charge had been delivered, said:

"Instructions should be presented to the court before the charge to the jury. This is not only due to the court, but is owing also to the rights to the parties litigant, and is in the public interest. The office of such request is to call the attention of the court to propositions of law supposed to affect the cause, that deliberation may be had thereon, and, if they be approved, incorporated in the charge of the court. It is unfair, after the charge is delivered, to press upon the court a whirlwind of requests to charge, possibly artfully contrived to entrap the court, and to require decision upon them without time for reflection."

In the Southern district of New York it has been the custom not to refuse requests made after the charge has been delivered. But requests made at that time cannot receive the same careful consideration that they would receive, if presented at the close of the evidence and before the commencement of the argument, and it would seem that the trial judge should not be held to the same degree of accountability for erroneously refusing a request when it is presented at the conclusion of his charge as he must be when it is presented in proper time.

[9] It is quite within the province of a District Judge to request counsel to present their requests to charge at or before the close of the evidence and before argument, and to announce that he will not entertain requests not so made, not having been made in "apt time." Requests which are presented after the charge has been given, and even after the arguments have been concluded, are usually designed to lead a judge into error, and the practice of entertaining requests so presented is not deserving of encouragement.

[10] It is objected that the court abused its discretion in permitting leading questions throughout the trial to be propounded by the government. An examination of the record satisfies us that such leading questions as were allowed were within the sound discretion of the court. In Wigmore on Evidence, § 770, it is said of the rule relating to leading questions that:

"It follows, from the broad and flexible character of the controlling principle, that its application must rest largely, if not entirely, in the hands of the trial court. So much depends on the circumstances of each case, the demeanor of each witness, and the tenor of the preceding questions, that it would be unwise, if not impossible, to attempt in an appellate tribunal to consider each instance adequately."

We find ourselves quite in accord with this statement, and we do not find in the case now before us any such abuse of discretion as would

warrant a reversal on that ground. The trial judge in a number of instances warned counsel for the government to avoid leading questions, and restricted the asking of such questions as much as possible.

[11] There are a number of other assignments of error which seem to us to be so trivial in their nature that we do not deem it necessary to prolong this opinion by a discussion of them in detail. We notice that defendant's counsel in his brief admits that "some of the errors assigned are technical," and we are told that the government cannot be permitted to speculate as to whether the defendant was injured by the conditions of which complaint is made. He tells us that error produces prejudice which cannot be disregarded, unless it appears beyond a doubt that the error could not have prejudiced the rights of the party who assigns it. Whatever the rule may be in some other circuit, it is not the rule in this that, no matter how trivial may be the error, prejudice must be presumed. That archaic theory we have several times repudiated, and we take this occasion to say again that we cannot accept it. We prefer to follow what seems to us the more rational view, that in order to justify a reversal, even in a criminal case, it must appear that the error is substantial. Prejudice will not be presumed in this court, when it is impossible to see that it could possibly have wronged the party who complains of it.

[12] In conclusion we desire to call attention to the fact that this case comes to us with a bill of exceptions which is such in name only. It is well understood what a bill of exceptions is. It is defined in Bouvier's Dictionary as:

"A written statement of objections to the decision of a court upon a point of law, made by a party to the cause, and properly certified to by the judge or court who made the decision."

In this case we have nothing of the sort. We have been presented with a copy of the stenographer's minutes, which contains all the evidence, the colloquies of counsel with each other, as well as their arguments to the court, all the remarks of the court, and in fact everything that was said and done at the trial, except the arguments of counsel before the jury. It includes the argument addressed to the court upon the motion for a new trial. At the end of everything we find the following:

"The within bill of exceptions and case, from page 1 to 861, is hereby settled and allowed"

—which is signed by the District Judge. This is not a true bill of exceptions which ought not to contain all the evidence, but only so much of it as is necessary for the presentation and decision of questions saved for review. Such a "bill" as we are presented with imposes an unnecessary burden on the court. We may say of it, as was said of a like "bill" in City of Chicago v. Le Moyne, supra, that:

"Such practice may be a saving of labor to counsel, but is neither lawyer like nor just to the court or to client. This bill should never have been signed by the trial judge, and we would not be subject to just criticism if we declined to consider the errors assigned."

When this court consented, because of the financial condition of the defendant, to dispense with the necessity of printing the record, and declared its willingness to accept a typewritten record, it had no intention of dispensing with a bill of exceptions in the proper form, and of taking upon itself the burden which has been imposed upon us of going through the record with which we have been presented.

Judgment affirmed.