## KALMANSON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 2, 1923.)

No. 78.

**1. Criminal law ⬤561(3)—Good character may alone raise reasonable doubt.**

A requested charge that evidence of good character may in and of itself be sufficient to create a reasonable doubt, where without it none would exist, was a correct statement of law.

**2. Criminal law ⬤1163(5), 1186(4)—Refusal to give correct charge does not always constitute reversible error.**

A refusal by the trial judge to charge sound law requested by accused does not always constitute reversible error, since even in a criminal case error requiring reversal must be substantial, and prejudice will not be presumed, where it is impossible to see that the error could have wronged the party who complains of it.

**3. Criminal law ⬤834(2)—Charge need not be in language of request.**

If the law applicable to a criminal prosecution was fairly presented to the jury, neither party has a right to complain because the trial judge preferred his own language to that of counsel.

**4. Criminal law ⬤829(8)—Instruction on weight of evidence of good character held sufficient to justify refusal of requested charge.**

Where the accusation was amply proved by the government, and the defendant introduced only colorless evidence as to his good character, the charge of the court that the jury had a right to consider the good character of defendant in determining his guilt or innocence, and consider whether a man of good character would commit that kind of an offense, was sufficient in connection with the charge that the prosecution must prove the offense beyond a reasonable doubt, so that it was not error to refuse a requested charge that evidence of good character might be sufficient in itself to create reasonable doubt, which charge, if given, might have misled the jury into thinking that the court meant that any evidence of good character might be a defense to an amply proven charge of crime.

Mayer, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Benjamin Kalmanson was convicted of presenting for payment or approval a claim against the government of the United States knowing it to be fraudulent, and he brings error. Affirmed.

See, also, 282 Fed. 619.

Plaintiff in error was indicted and convicted under section 35, Criminal Code, as amended by Act Oct. 23, 1918 (Comp. St. Ann. Supp. 1919, § 10199), providing that "whoever shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil * * * service of the United States or any department thereof * * * any claim upon or against the government of the United States, or any department or officer thereof, * * * knowing such claim to be false, fictitious, or fraudulent * * * shall be fined," etc.

The specific charges against Kalmanson, set forth in 15 counts, were that he had repeatedly presented to the Post Office Department false and fraudulent claims for damage to certain merchandise, viz. eggs shipped to him by parcel post from divers parts of the country. We find that the accusation was amply proved, and shall notice but one assignment of error, viz.: "That the trial court erred in refusing to charge the jury as requested by the defendant on the subject of the good character of the defendant."

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Max D. Steuer and Irving D. Lipkowitz, both of New York City, for plaintiff in error.

John E. Joyce, Asst. U. S. Atty., of New York City (James S. Johnson, Asst. U. S. Atty., of New York City, on the brief), for the United States.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The defendant below did not testify, and the evidence against him was direct, positive, abundant, and credible. He did offer two "character witnesses," of whom one testified in substance that defendant's reputation for honesty was good "with us"—apparently meaning himself and others connected with his corporation. The other testified in common form that he knew Kalmanson, knew other people that knew him, and that his reputation for honesty was good. The court charged with great emphasis on the necessity of the offense being proven beyond a reasonable doubt, and then said:

"You have a right to consider the good character of the defendant, if you find it is good, in making up your mind about the guilt or innocence of the defendant. * * * The court charges you that if you do find the defendant has a good character, you have a right to consider that fact as a circumstance in this case, as to whether a man of good character would commit this kind— or any offense."

At the close of the colloquial charge the court was requested "to charge that the evidence of good character may in and of itself be sufficient to create a reasonable doubt where without it none would exist." This the court declined, saying:

"I cannot charge that; if they do find that the defendant has a good char-- acter, they may consider that a circumstance in the case the same as in any other case."

The requested words were almost a quotation from Edgington v. United States, 164 U. S. 361, 366, 17 Sup. Ct. 72, 41 L. Ed. 467, and therefore sound law.

[2] The sum of argument at this bar is that a refusal by the trial judge to charge sound law must constitute reversible error. This is not always true. Even in a criminal case error requiring reversal must be substantial; prejudice will not be presumed when it is "impossible to see that it could possibly have wronged the party who complains of it." Per Rogers, J., in Linn v. United States, 251 Fed. 476, 483, 163 C. C. A. 470, 477.

[3] Nor is it enough to complain of refusal to charge in words selected by counsel. Taking the whole proceedings together, the fundamental inquiry is:

"Was the law applicable to the controversy fairly presented to the jury? If so, neither party has a right to complain because the trial judge preferred his own language to that of counsel." Green v. United States, 240 Fed. 949, 951, 153 C. C. A. 635, 637.

[4] What the court did say was all that the defendant under the circumstances had a right to insist upon. Upon what insistence may fairly be placed varies with cases. Snitkin v. United States (C. C.

A.) 265 Fed. 489, much relied upon by the plaintiff in error, is a good example. In that case there was a serious contest between the stories told on the witness stand by the then defendant and a witness, and the court naturally held that "in view of the contest * * * over the juror's acceptance of one or the other of their conflicting stories, the error was prejudicial"; i. e., the error of refusing specifically to charge that Snitkin's reputation alone might create a reasonable doubt of guilt.

In Rosen's Case (C. C. A.) 271 Fed. 651, 657, the trial court had fallen into the mistake of specifically stating that, "if there is a doubt in your mind" as to the credibility of certain witnesses, then "you may have recourse to the testimony regarding their good reputation." But there was added to this error the lukewarm statement:

"Indeed, the courts say that a man's good reputation in a case like this may often of itself create a reasonable doubt."

But, under the circumstances disclosed by that record, this court was of opinion that the "jury could not have been misled * * * [nor] the accused prejudiced by the instructions." Neither in Edgington's Case, supra, nor in that of Oppenheim, 241 Fed. 625, 154 C. C. A. 383, nor in any other case, has it ever been held as incumbent upon the trial court, no matter what the testimony before court and jury, to use the formula requested by counsel for defendant below.

Having regard to this record and to the extremely colorless and insufficient nature of the character evidence, we think that had the formula been repeated, and had been uttered (as rquested) at the close of the court's colloquial charge, it would have been calculated to mislead the jury into thinking that the court meant to say that any evidence of good character might be a complete defense to an amply proven charge of crime.

This plaintiff in error was given an instruction that the evidence concerning his character should be considered with and as a part of all the evidence, and that upon it all they must find the man guilty, if at all, beyond every reasonable doubt. This case (on the point in issue) is substantially identical with that of Warren v. United States, 250 Fed. 89, 162 C. C. A. 261; with the ruling there made we agree.

Being of opinion that this plaintiff in error had a fair trial, and that no reversible error was committed, judgment is affirmed.

MAYER, Circuit Judge (dissenting). Defendant was a merchant engaged in dealing in eggs. So far as the record discloses, he had been a man of good reputation prior to the alleged commission of the acts which led to the indictment upon which he was tried. It will be necessary to quote somewhat fully from the record in order to present a true picture of the trial in the respects in which it provoked what I think is clear reversible error.

The first witness called for the defense was Samuel E. Murray, president of a corporation known as Murray, Halpern & Co., of 305 Greenwich street, New York City. The business of this concern was dealing in butter and eggs, and Murray had been in that business in

New York City for about 3 years and in that class of business altogether 30 years. He testified that his company had done considerable business with defendant, that he knew other people "in the street," meaning thereby in that class of business, and that defendant's reputation was generally good, and that defendant's reputation for honesty was good "with us." Apparently, because of the use of the words "with us," he was next asked, "Just yes or no," to which he answered, "Yes." Finally he was asked, "Is it good or bad?" to which he answered, "Good." The following colloquy then took place between the court and counsel for the defense:

"The Court: Are you going to have your client testify?

"Mr. Aranow: I may not.

"The Court: Then how do you expect to prove the defendant's character, if you don't?

"Mr. Aranow: I have always done that, even though I do not put the defendant on the stand. The defendant not taking the stand does not in any way affect the character of the defendant.

"The Court: But you prove a man's character for the purpose of bolstering up his testimony, usually. * * *

"The Court: Well, it has not been customary down in my jurisdiction to permit the character of the defendant to be proven, unless he either promises to go on the stand or does go on the stand. What is your understanding, Mr. District Attorney?

"Mr. Johnson: I have never known of character witnesses to testify without the defendant going on the stand.

"Mr. Aranow: In the past 14 years I have done it hundreds of times in this state, and I have done it before Judge Mayer and Judge Hand and every judge in the district. If your honor has any doubt about it, perhaps you will let me put it in now, and strike it out later; but I want you to consider it, because I do not think it is at all essential.

"The Court: I will permit it for the present, but you may bring authorities to show that it is done in this jurisdiction."

The next witness called was David Goldberger, a manufacturer of women's wear in New York City. Goldberger testified that he knew defendant, his family, and his friends, knew other people who knew defendant, that the latter's reputation for honesty was good, and was likewise good for truthfulness. It is difficult to understand the answer of the assistant district attorney, when to the knowledge of the writer there has never been any question that the defense may call "character" witnesses without the defendant taking the stand in his own behalf, and this procedure has been followed time and time again in trials in the District Court for the Southern District of New York.

Prior to the charge and in compliance with rule 7 of the Common Law Rules of the District Court for the Southern District of New York (Friedman v. United States [C. C. A.] 276 Fed. 792), counsel for defendant submitted the following request to charge:

"You have heard evidence of the standing and reputation for good character of the defendants on trial in this case. Good character may alone and of itself create a reasonable doubt in your minds of the guilt of these defendants."

This request was refused. After the court had finished his colloquial charge and had charged various requests, he charged as follows:

"Gentlemen of the jury, you have a right to consider the good character of the defendant, if you find it is good, in making up your mind about the guilt or innocence of the defendant in this case."

He then asked counsel: "Do you want to submit any decisions in regard to that?" Then occurred the following:

"Mr. Koenig (one of the counsel for defendant): I never heard the government dispute the right to introduce character testimony. If there were no character testimony produced, the court would have a right to refuse to charge with reference to good character testimony. If the defendant takes the stand, that in and of itself does not put the issue of character in evidence; it is only when independent testimony is offered in reference to that fact.

"The Court: Well, you have a different ruling here in New York (the judge came from another district or circuit) than what we have down in my country.

"Mr. Koenig: I don't think the government disputes that.

"Mr. Johnson: I am not familiar with the authorities on the question. All I said this morning was that in my service here I have never known of a case where character witnesses have been put on the stand and the defendant did not take the stand.

"Mr. Koenig: Well, may I say this to the court: Good character testimony is reputation testimony. When a defendant takes the stand, he can be interrogated, for instance, on cross-examination, as affecting his credibility, with reference to any vicious or degrading act which he may have committed. That goes to his character, or as he is known in the community. Now, whether a defendant takes the stand or not is immaterial, because the right to stay off the stand is a right of the defendant. But character testimony is like any other fact in the case; there must be evidence of it, and, like any other fact in the case, the defendant may produce evidence. Therefore he produces evidence of his good character, and that does not go to a fact in the case, but it goes to the ruling of law as to the weight of the defendant's character, to be considered by the jury, as an element of probability in the case of the doing or the not doing of an act. There isn't any doubt about it. I mean it has never been seriously questioned."

At the conclusion of the foregoing the court said:

"Well, gentlemen of the jury, the court charges you that, if you do find the defendant has a good character, you have a right to consider that fact as a circumstance in this case, as to whether a man of good character would commit this kind of an offense."

From the foregoing, it will be seen that much emphasis was placed upon the question of character or reputation, and that it became vital to defendant that the court's charge on that subject should be correct. The request to charge was framed in accordance with Remsen v. People, 43 N. Y. 6 (cf. People v. Conrow, 200 N. Y. 356, 93 N. E. 943), and this precise language has been consistently charged in trials in the New York courts. Substantially the same language is to be found in Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, and the same question arose in one form or another in Oppenheim v. United States, 241 Fed. 625, 154 C. C. A. 383, in Snitkin v. United States, 265 Fed. 489, and in Rosen v. United States (C. C. A.) 271 Fed. 651, 656. The only case which seems to hold contrary to the foregoing is Warren v. United States, 250 Fed. 89, 162 C. C. A. 261, and I think that case is clearly inconsistent with authority.

The vital point of this classic charge is that good character may itself create a reasonable doubt. In the case at bar, counsel for the defense, as noted supra, were careful to submit this request to charge at a time when the court could have incorporated it in his charge, and avoided either confusion or undue emphasis. The court's charge, however, was flatly wrong, and, in view of all that took place, must

have created a wrong impression upon the jury, and may well have misled the jury. It may be observed that all that the court said was that the jury had a right to consider the good character of defendant in making up its mind as to guilt or innocence.

If the charge had been within Green v. United States, 240 Fed. 949, 951, 753 C. C. A. 635, and the law applicable to the controversy had been fairly presented to the jury, and the trial judge had merely preferred his own language, correctly stating the law, to that of counsel, there could now be no just complaint; but that is precisely what did not happen. We cannot speculate as to what effect "character" evidence may have upon a jury, nor can we tell whether or not a particular item of testimony has influenced a jury in one way or another; but the law to the effect that good character may of itself create a reasonable doubt is so well settled, and states so important a proposition to be conveyed to the minds of the jury, that a defendant is entitled to a clear and correct instruction on that point. Particularly in this case, owing to the course the trial took and the discussion which ensued, was the failure correctly to charge a serious injury to defendant.

For the reasons stated, I think the refusal to charge, as requested, was prejudicial error, and I vote to reverse.