### RUDD v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.  October 28, 1909.)

No. 2,875.

1. POST OFFICE (§§ 35, 50*) — USING MAILS TO DEFRAUD — PROSECUTION — DEFENSES.

In a prosecution under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), for using the mails to defraud, it is a defense that defendant honestly believed that the representations made in the letters or circulars which he is charged with having sent through the mails were true, and that he had no actual intent to defraud, and when such defense is made it is for the determination of the jury.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. §§ 35, 50.*]

2. CRIMINAL LAW (§ 755½*)—TRIAL—COMMENTS OF JUDGE ON EVIDENCE.

While it is the right of the judge of a federal court, in a criminal as well as a civil case, to comment on the facts in his charge to the jury, his comments should be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1731; Dec. Dig. § 755½.*]

3. CRIMINAL LAW (§ 823*) — REVIEW BY APPELLATE COURT — COMMENTS OF JUDGE ON DEFENSE.

Where the langauge of a court in commenting on the defense relied on in a criminal case in its charge to the jury was so positive and emphatic and of such a character that the jury may have believed that a finding for the defendant would subject them to ridicule, a mere withdrawal of such language, and a direction to the jury that the question is for them, may be of doubtful sufficiency to correct such impression, and in such case the just remedy is a new trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1995; Dec. Dig. § 823.*]

In Error to the District Court of the United States for the Western District of Missouri.

John F. Rudd was convicted of using the mails to defraud, and brings error. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Paul R. Stinson (R. R. Brewster, on the brief), for plaintiff in error. A. S. Van Valkenburgh, U. S. Atty., and Leslie J. Lyons, Asst. U. S. Atty.

Before HOOK, Circuit Judge, and RINER and AMIDON, District Judges.

HOOK, Circuit Judge. Rudd was convicted of using the mails in aid of a scheme to defraud, contrary to section 5480 of the Revised Statutes (U. S. Comp. St. 1901, p. 3696). He had been associated with others in selling county rights to handle a machine for which one of them had secured a patent, and to facilitate the business they were engaged in they sent through the mails circulars and other communications containing alluring representations which the government charged and the evidence showed quite clearly were contrary to well-known fundamental physical laws. The machine was designed as an attachment to a pump for lifting water, and it consisted principally of a heavy pendulum, a lever, some cogwheels, and a spring. It was represented that the power for the operation of the pump came from the swing of the pendulum and the spring; that the latter was auxiliary to the pendulum, and replenished the loss in the momentum of the swinging weight. It was also said that they were adapted to pumps in wells as deep as 300 feet; that there were three sizes of them, and each stroke of the pendulum on size No. 1, which was the smallest, exerted a lifting power of 500 pounds and had a capacity of 20 gallons of water per minute; that one winding of the spring would require only about 15 minutes of labor, and would furnish enough power for 12 consecutive hours of operation, or for about 12 days for the average user of water; also that the arrangement was so simple a 17 year old boy could attend to it. There were other representations; but the above will indicate with sufficient particularity the character of their literature.

The main defense was that, though the machine may have been impracticable, the accused honestly believed in its efficiency, and that what he did was without intent to defraud. Of course, if this was so, there was no violation of the law which was designed to prevent the use of the post office in intentional efforts to despoil. Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709. A representation may be so obviously without foundation as to afford cogent evidence of a criminal intent in him who makes it; but nevertheless, if in fact it proceeds from honest ignorance or delusion, it does not help to make a scheme to defraud within the statute. Complaint is made that the trial court, by extended remarks in the presence of the jury, erroneously prejudiced the accused in respect of this defense. It is sufficient to say, without going into details, that the view was undoubtedly impressed upon the jury that no one with the slightest degree of intelligence above insanity could believe the machine was practicable. The accused was sane; but the remarks of the court left no room for the probability of his self-deception. Whether conduct which is made the subject of a criminal charge results from a credulous self-deception, or, on the other hand, evinces a design to defraud the public, is a question for the determination of the jury; and it is none the less so,

173 F.—58

though the truth of the matter may be clear to most intelligent minds. That so many projects, which to the discerning are manifest schemes for spoliation, meet with success and find victims among honest, well-meaning people, shows how futile it is to attempt to define the bounds of human credulity. If the jury believed the accused was of sane mind, of which there was no question, the remarks of the court were calculated to impose upon them a constraint that interfered with an independent consideration of his defense. As Chief Justice Fuller said in Starr v. United States, 153 U. S. 614, 626, 14 Sup. Ct. 919, 38 L. Ed. 841, the influence of the trial judge on the jury is necessarily and properly of great weight, and his lightest word or intimation is received with deference and may be controlling. So positive and emphatic were the remarks of the court that it is not too much to say the jury may have believed a finding for the accused would have subjected them to ridicule. True, the court afterwards withdrew the language, and said that "it does not follow that a man is a fool or insane who believes the representations," and that it was a question for the jury; but it is doubtful the damage was repaired, and when that is the case the just remedy is a new trial. A mere withdrawal of words, and a direction to the jury that the question is for them, is not always sufficient. The effect of what was said may remain.

We do not mean to impair in any degree the right of a trial court in both civil and criminal cases to comment upon the facts, to express its opinion upon them, and to sum up the evidence, for that is one of the most valuable features of the practice in the courts of the United States. A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done. But his comments upon the facts should be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment.

The other matters of which complaint is made need not be considered.

The judgment is reversed, and the cause remanded for a new trial.