SANDALS et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1914.)

No. 2396.

1. POST OFFICE (§ 48*)—OFFENSES—INDICTMENT—USE OF MAILS TO DEFRAUD.

The offense denounced by Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (U. S. Comp. St. Supp. 1911, p. 1653), is the use of the mails in execution of a fraudulent scheme, not the devising of the scheme, although the defendants are entitled to be advised of the particulars of the scheme to enable them to prepare their defense; and therefore an indictment under that section, which alleges the devising of the scheme on

one date and the use of the mails on another, is not objectionable as charging the commission of the offense on two separate dates.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*]

2. POST OFFICE (§ 48*)—OFFENSES—INDICTMENT—USE OF MAILS TO DEFRAUD.

An indictment which would be sufficient to charge an offense under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), which made punishable any person who, having devised any scheme to defraud, to be executed by opening correspondence with any other person through the United States mails, for the purpose of executing such scheme, mailed any letter, etc., is more than sufficient to charge the offense under Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (U. S. Comp. St. Supp. 1911, p. 1653), making punishable any person who, having devised a scheme for obtaining money by false pretenses, etc., mailed any letter in execution of such scheme, but not requiring the intent to use the mails to be shown as part of the scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*]

3. POST OFFICE (§ 35*)—OFFENSES—USE OF MAILS TO DEFRAUD—STATUTES.

Under Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (U. S. Comp. St. Supp. 1911, p. 1653), providing that whoever, having devised any scheme to defraud, shall, for the purpose of executing such scheme, mail a letter in a United States post office, which section became effective in January, 1910, and section 343, authorizing the prosecution of offenses committed prior to the enactment of the Code in the same manner as if it had not been passed, one indicted for using the mails to defraud subsequent to January, 1910, may be prosecuted under section 215, although the indictment charges that the scheme was devised in 1909.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

4. CRIMINAL LAW (§ 901*)—MOTION FOR DIRECTED VERDICT—WAIVER.

A motion for a directed verdict of not guilty in a criminal prosecution, made at the close of the government's evidence, is waived by the introduction of evidence for the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2124; Dec. Dig. § 901.*]

5. POST OFFICE (§ 35*)—OFFENSES—USE OF MAILS TO DEFRAUD—GOOD FAITH.

The fact that a scheme is visionary does not make it fraudulent, if the promoter thereof actually in good faith believed in it himself.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

6. POST OFFICE (§ 50*)—OFFENSES—INSTRUCTIONS—USE OF MAILS TO DEFRAUD.

In a prosecution for using the mails in the execution of a fraudulent scheme for the sale of corporate stock, where the defense was a denial by the promoter of the scheme of an intent to defraud, a charge that the scheme was bound to fail, and that there was no use in the jury spending much time on that issue, since, looking back on it in the clear light that time afforded, it was easy to see that whoever bought the stock at the price it was sold by the defendants was bound to lose his money, was erroneous, as tending to eliminate from the case the question of the defendant's good faith, which was to be determined in the light of the circumstances as they appeared at the inception and during the execution of the scheme, and not as it eventually resulted.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*]

7. POST OFFICE (§ 50*)—INSTRUCTIONS—USE OF MAILS TO DEFRAUD.

A subsequent portion of the charge, which severely criticised the directors of the company, who were not on trial, for permitting the promoters

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to declare dividends which were in excess of those warranted by the condition of the corporation, and indicated that the directors would be punishable for their acts, and then stated that the defendants could not hide behind the skirts of such directors, was also erroneous as a further restriction upon the exercise by the jury of their judgment on the issue of defendant's good faith.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

8. CRIMINAL LAW (§ 823*)—TRIAL—COMMENTS OF JUDGE ON EVIDENCE.

The error in such charge was not cured by a disclaimer by the judge of a purpose to control the jury by such remarks, or by a qualification thereof, in directing the attention of the jury to the essential issues, since the effect of such positive and emphatic statements could not thereby be removed from the minds of the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1995, 3158; Dec. Dig. § 823.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Charles A. Sandals and another were convicted of using the United States mails in execution of a scheme to defraud, and they bring error. Reversed, and new trial awarded.

Plaintiffs in error were convicted on charges of using the United States mails in execution of a scheme to defraud. The scheme is set out in the first count of the indictment, and is incorporated into the subsequent (seven) counts by specific reference; and its execution as far as alleged is shown in the ordinary manner in each of the counts. The scheme as devised and intended by defendants was, in substance, to defraud numerous persons, some of whom are named and still others unknown, and to obtain from them money by means of false and fraudulent pretenses, representations, and promises; and to effect these ends letters, circulars, and communications were to be sent through the post office establishment of the United States. The scheme also involved the formation of a partnership and a corporation, the former under the name of Sandals, Griffin & Co., and the latter under that of the Sterling Oil Company, to be incorporated under the laws of Arizona in March, 1909; and, under the partnership name, the defendants were to engage in business as fiscal agents of the corporation to sell its capital stock. A contract for this purpose was to be made between defendants and the corporation, providing that they should turn over to it (in trust, subject to conditions that need not here be mentioned) certain oil properties located in Illinois and Oklahoma, for which the corporation should issue to them a large number of shares of its paid-up capital stock; that they should apply 60 per cent. of the proceeds of sales toward the discharge of certain obligations they had incurred upon the acquisition of the properties and their equipment for the production of oil. It was further designed as part of the scheme that defendants should then, through letters, circulars, and communications, represent that the company was operating a number of large and productive oil properties and marketing the oil at great profit, was sinking and planning to sink numerous wells, and was possessed of the best oil properties in the land; that large parts of the purchase prices of the properties had been paid, and from time to time further payments would be made until the obligations were discharged; that out of its net proceeds the company was paying a monthly dividend of 2 per cent. and an additional quarterly dividend of 3 per cent. upon the purchase price of each share of stock.

Further, it was alleged that these representations were made, but that defendants knew they were not true; that the prices at which the stock was sold were arbitrarily fixed by defendants; that the dividends were wholly

fictitious and false; and that the purpose was to sell the stock and convert large portions of the proceeds to defendants' own use.

Copies of some of these letters, circulars, and communications are set out in the portions of the several counts which allege execution of the scheme. There does not seem to be any dispute as to the authenticity of the originals, nor as to the fact that they were at the dates alleged (beginning in May and ending in October, 1910), addressed and mailed, with proper postage prepaid, in the post office of the United States in the city of Cleveland, Ohio, where the offices of the defendants and of the corporation were maintained.

At the beginning of the trial defendants' counsel objected to the introduction of evidence, because the indictment did not charge an offense punishable by law. At the close of plaintiff's evidence, defendants moved the court to direct a verdict in their favor on the grounds of insufficiency of the indictment and of the evidence; and at the close of all the evidence defendants moved that they be discharged and the case against them dismissed for like reasons. These matters were overruled, and exceptions allowed. Assignments of error touching these and other rulings are presented here, and are disposed of in the opinion, so far as they are regarded as of present importance.

T. F. Turner, of Canton, Ohio, and John J. Sullivan and Jerome F. Patterson, both of Cleveland, Ohio, for plaintiffs in error.

U. G. Denman, of Toledo, Ohio, for the United States.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). We are convinced that the judgment below will have to be reversed and a new trial awarded for error in the charge; but in the first place we shall dispose of several initial questions which might otherwise recur at the next hearing.

[1] It is urged that two distinct dates are laid in each count of the indictment as the time of the offense. This is a mistake. Counsel seem to be in doubt whether the offense charged was committed when the scheme was devised or when it was carried into execution. While defendants were entitled to be so advised of the particulars of the scheme as to enable them to prepare their defense (Foster v. United States, 178 Fed. 166, 171, 101 C. C. A. 485 [C. C. A. 6th Cir.]), yet devising the scheme was not the offense. The offense denounced by the statute was the alleged use of the post office establishment in execution of the scheme. Milby v. United States, 120 Fed. 1, 4, 57 C. C. A. 21 (C. C. A. 6th Cir.); O'Hara v. United States, 129 Fed. 551, 554, 64 C. C. A. 81 (C. C. A. 6th Cir.); Gould v. United States, 209 Fed. 730, 734, 126 C. C. A. 454 (C. C. A. 8th Cir.); Stockton v. United States, 205 Fed. 462, 466, 123 C. C. A. 530, 46 L. R. A. (N. S.) 936 (C. C. A. 7th Cir.); Lemon v. United States, 164 Fed. 953, 957, 90 C. C. A. 617 (C. C. A. 8th Cir.); Brooks v. United States, 146 Fed. 223, 226, 76 C. C. A. 581 (C. C. A. 8th Cir.).

[2] The indictment appears to have been drawn in accordance with old section 5480, Revised Statutes (U. S. Comp. St. 1901, p. 3696), and consequently was more than adequate in its allegations under section 215 as construed in United States v. Young, 232 U. S. 156, 161, 34 Sup. Ct. 303, 58 L. Ed. ——.

[3] It is further claimed that defendants could not be prosecuted because the scheme is laid as of January, 1909, and section 215 of the federal Penal Code was not enacted until January, 1910. This ignores

alike the statutory inhibition existing in 1909 (section 5480), the time shown to have been consumed in developing the scheme, and the allegations charging defendants with having intended to execute it at the times they used the mails after the passage of the law. Besides, section 215 seems to contemplate, among others, a situation like this; for it provides:

"Whoever, having devised * * * any scheme * * * to defraud * * * shall, for the purpose of executing such scheme * * * place, or cause to be placed, any letter * * * in any post-office, * * * to be sent or delivered by the post-office of the United States, * * * shall be fined," etc. 35 Stat. p. 1130.

And, moreover, section 343 expressly authorizes the prosecution and punishment of offenses committed prior to enactment of the Penal Code "in the same manner and with the same effect as if this act had not been passed." 35 Stat. p. 1159; Smith v. United States, 208 Fed. 131, 132, 125 C. C. A. 353 (C. C. A. 8th Cir.). It cannot be, then, that where only the devising of the scheme occurred before the passage of the act, its execution thereafter is any the less an offense.

Enough has been said to dispose of the objection made at the opening of the trial to the introduction of any evidence, and also of the motion made at the close of plaintiff's evidence to direct a verdict in favor of defendants, on the ground of insufficiency of the indictment.

[4] The claim of insufficiency of evidence, also offered in support of this motion, was waived by the introduction of evidence for defendants. Gould v. United States, supra, 209 Fed. 735, 126 C. C. A. 454; Simpson v. United States, 184 Fed. 817, 820, 107 C. C. A. 89 (C. C. A. 8th Cir.); Leyer v. United States, 183 Fed. 102, 104, 105 C. C. A. 394 (C. C. A. 2d Cir.); Burton v. United States, 142 Fed. 57, 59, 73 C. C. A. 243 (C. C. A. 8th Cir.). The motion made at the close of all the evidence, that the defendants be discharged and the case dismissed for insufficiency of evidence, was rightly denied. And, since the evidence to be adduced at the next hearing may differ from that offered at the last trial, we content ourselves with saying that the present record required submission of the case to the jury.

[5] We are thus brought to a consideration of the charge of the court. The complaint of counsel for defendants is in effect that portions of the instructions respecting some of the facts, and also the conduct of persons not on trial, were such as to prevent the jury from exercising a free and independent judgment. This may be better understood in connection with a brief statement of the position taken by defendants at the trial and some portions of the charge to which the complaint relates. The defense and the claim of defendants, as well as the tendency of proofs they offered through their own testimony and that of others, including correspondence, contracts, and the like, were in substance a denial of fraudulent intent, and, on the contrary, an insistence of good faith, in every transaction alleged in the indictment and shown in the evidence; that prior to the date of the alleged scheme to defraud they had arranged to secure certain oil property, first by option and later by lease, which they had good reason to believe was productive and profitable; that, while they had been the

victims of fraudulent representation in the beginning, they were successful in rectifying the mistake through leases of other properties of oil-bearing qualities, parts of which had been and were producing oil in large quantities; that the Sterling Oil Company was organized with a directory comprising men of good repute, who, with knowledge of the situation, concurred in the views and opinions of defendants; that the company issued stock in large quantities, and defendants, as its financial agents, sold shares at varying prices and aggregating a sum of several hundred thousand dollars; that this was applied toward the payment of purchase prices of property, drilling of wells, and equipment for producing oil, and necessary operating expenses, including expenses of defendants; that the total dividends paid were less than the net earnings; and that if defendants had been permitted to continue the business the persons to whom they had sold the stock would have made large profits.

It is not intended to intimate what weight in the end should have been accorded to the evidence offered either by the government in support of the indictment or by the defendants to sustain the position taken by them. It is neither proper nor necessary to do so in considering the present question. The ultimate issue of fact was whether defendants were actuated by an intent to defraud when using the mails (Harrison v. United States, 200 Fed. 662, 665, 666, 119 C. C. A. 78 [C. C. A. 6th Cir.]); and this was to be resolved by the jury through an unfettered consideration of all the admissible facts and circumstances, under appropriate instructions of the court. Since the charge of an intent to defraud was met by a claim of good faith, the question is whether, in practical effect, any of the portions of the charge complained of operated to prevent the jury, even when considering the charge as a whole, from exercising a free and independent judgment touching the element of good faith. We quote the following portions:

"Now, gentlemen, this fact stands out in this case beyond all question, that the business in which they [defendants] were engaged did operate as a fraud upon those who bought oil stock. There can be no gainsaying that. There is no use for the jury to spend very much time upon that proposition, because as we look back on it, and in the clear light that time and reflection affords us, we can see that whoever bought this oil stock at the prices [at which] they were obtaining it, and upon which it was sold generally in the market, was bound to lose his money. * * *

" * * * Now, I have said that this scheme was bound to work a loss. There is no question about that. It was bound to fail."

After describing by illustration what would and what would not justify the payment of dividends, it was said:

" * * * These dividends, declared monthly, were, under the most favorable circumstances, more than twice what anything justified under any sort of business consideration should be declared."

Later it was said:

"Gentlemen of the jury, I do not know, if I had my choice, whether I would prefer to be the defendants in this case, or some of those so-called directors of the Sterling Oil Company. Dividends could only lawfully be declared by the directors of the Sterling Oil Company. Sandals and Griffin had no right to say what the dividends should be, and I only wish that I had some of these smug directors here in such a shape as that they might understand and the

public might understand the contemptible position in which they stand. I can't see, for my part, any great difference between a man who accepts a bribe directly and a man who takes a bunch of stock in a corporation like this for a few cents on the dollar—one-tenth or one-twentieth of what his neighbors are paying for it—and permits his neighbors to buy it at an exaggerated price on the strength of his standing in the community; a man who then sits back and permits a thing like this to go on year in and year out, and accepts dividends on such a basis and on such an arbitrary declaration as dividends were provided here. But, gentlemen of the jury, those smug gentlemen are not on trial, and Sandals and Griffin cannot hide themselves in this case behind their skirts. They must stand or fall by what they did, and because the directors or the president of this corporation failed to get together for 13 or 14 months, and permitted Sandals and Griffin to manage these affairs under the name of the Sterling Oil Company, is no defense at all, and does not make the declaration of these dividends a formal declaration by the corporation known as the Sterling Oil Company."

We cannot repress the feeling that these portions of the charge operated to eliminate the question of good faith. The solution of that question was not to be found in retrospection; most men are wise after the fact. Expressions coming from the court to the effect that, looking back at the transactions, "this scheme was bound to work a loss, * * * was bound to fail," were calculated to charge defendants with a degree of foresight, when entering upon and carrying out their enterprise, which was inconsistent with an honest belief in either its merits or success, even though such belief might in truth have existed.

[6] A man may be visionary in his plans and believe that they will succeed, and yet, in spite of their ultimate failure, be incapable of committing conscious fraud. Human credulity may include among its victims even the supposed impostor. If the men accused in the instant case really entertained the conviction throughout that the oil properties and the stock in dispute possessed merits corresponding with their representations, they did not commit the offense charged. As Mr. Justice Brewer said in Durland v. United States, 161 U. S. 306, 313, 16 Sup. Ct. 508, 511 (40 L. Ed. 709):

"The significant fact is the intent and purpose. The question presented by this indictment to the jury was not, as counsel insist, whether the business scheme suggested in this bond was practicable or not. If the testimony had shown that this Provident Company, and the defendant, as its president, had entered in good faith upon that business, believing that out of the moneys received they could by investment or otherwise make enough to justify the promised returns, no conviction could be sustained, no matter how visionary might seem the scheme."

In Rudd v. United States, 173 Fed. 912, 913, 97 C. C. A. 462, 463 (C. C. A. 8th Cir.), the scheme to defraud and the circulars sent through the mails to promote it concerned a machine designed as an attachment to a pump for lifting water, which was shown to be "contrary to well-known fundamental physical laws." In respect of the defense of honest belief in the efficiency of the machine, Judge Hook said:

"The main defense was that, though the machine may have been impracticable, the accused honestly believed in its efficiency, and that what he did was without intent to defraud. Of course, if this was so, there was no violation of the law which was designed to prevent the use of the post office in intentional efforts to despoil."

See, also, Horn v. United States, 182 Fed. 721, 105 C. C. A. 163 (C. C. A. 8th Cir.) page 737 of majority opinion, and page 740 of Judge Sanborn's dissenting opinion.

[7] We also think the defense of good faith was further restricted by the statement that the monthly dividends were "more than twice what anything justified under any sort of business consideration should be declared"; and when there is added to this the statement, above quoted, respecting the directors of the Sterling Oil Company, the error assigned becomes manifest. The directors were not on trial; we do not recall any suggestion that they had even been indicted; and still the clear tendency of the language employed in respect of their conduct is that under an appropriate charge they would have been defenseless. True, this statement appears to have been made in regard to an effort of the accused to aid their defense through the showing made as to the conduct and character of the directors; but, after discrediting the directors as shown, the inevitable effect of the statement that the defendants could not "hide themselves in this case behind their [the directors'] skirts" was to restrain and embarrass the jury in the exercise of its own judgment. What remained either to be said or considered touching the question of defendants' good faith?

[8] It should be observed that the learned judge in substance disclaimed any purpose to control the jury by the remarks complained of, and measurably qualified them by explaining and directing attention to the essential issues; but we cannot believe that the influence of positive and emphatic statements like these can be effectively removed by explanation. Rudd v. United States, supra, 173 Fed. 914, 97 C. C. A. 462. The jury is naturally sensitive to the court's expressions of opinion concerning the issues of fact in any case (Starr v. United States, 153 U. S. 614, 625, 626, 14 Sup. Ct. 919, 923 [38 L. Ed. 841]; and while it is true that ordinarily in the federal courts a trial judge's "expression of opinion upon the facts is not reviewable upon error," yet, as Mr. Chief Justice Fuller said in that case when reversing the judgment for error in the charge:

"But he should take care to separate the law from the facts, and to leave the latter in unequivocal terms to the judgment of the jury as their true and peculiar province."

See, also, Hickory v. United States, 160 U. S. 408, 424, 425, 16 Sup. Ct. 327, 40 L. Ed. 474 (opinion by the present Mr. Chief Justice White); Mullen v. United States, 106 Fed. 892, 895, 46 C. C. A. 22 (C. C. A. 6th Cir., opinion by the present Mr. Justice Day); Rudd v. United States, supra; Foster v. United States, 188 Fed. 305, 308, 310, 110 C. C. A. 283 (C. C. A. 4th Cir.).

The following language of Judge Hook in the Rudd Case, supra, 173 Fed. 914, 97 C. C. A. 464, has our approval:

"We do not mean to impair in any degree the right of a trial court in both civil and criminal cases to comment upon the facts, to express its opinion upon them, and to sum up the evidence, for that is one of the most valuable features of the practice in the courts of the United States. A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done. But his comments upon the facts should be judicial and dispassion-

ate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment."

It should be stated that, if the scheme here involved was not in fact devised and executed in good faith, the defense should fail; but the true remedy for the error found is a new trial.

The judgment is accordingly reversed, with direction that retrial be awarded.