## DILLON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

No. 66.

1. **Criminal law ⊕⇒762(2)—Expression by judge of opinion of guilt of accused not error.**

   In the federal courts the trial judge is entitled to express in his instructions his opinion on the facts and the guilt or innocence of the accused, provided the jury is given unequivocally to understand that it is not bound by the expressed opinion of the judge.

2. **Intoxicating liquors ⊕⇒224—Burden of proving legality of possession of liquor held to rest on defendant.**

   Under National Prohibition Act, tit. 2, § 33, which provides that possession of liquor by any person not legally permitted by the act shall be prima facie evidence that it is kept for an unlawful purpose, but that "it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, * * * provided such liquors are for use only for the personal consumption of the owner," etc., where liquor was found in possession of a defendant in his hotel, an instruction that the burden was on him to prove that it was possessed lawfully by him for his own use *held* not erroneous.

3. **Searches and seizures ⊕⇒7—Seizure of liquor found on search made with defendant's consent held not unlawful.**

   Where prohibition agents entered the public bar in defendant's hotel, and, finding there a bottle of whisky, asked permission to search the premises, which was granted and the search led by defendant, the seizure of other liquor found in such search, though the agents had no search warrant, *held* not in violation of defendant's rights under Const. Amend. 4.

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Northern District of New York.

Criminal prosecution by the United States against Edward J. Dillon. Judgment of conviction, and defendant brings error. Affirmed.

Walter Welch, of Syracuse, N. Y., for plaintiff in error.

Clarence E. Williams, U. S. Atty., of Utica, N. Y., and Hiram C. Todd, U. S. Atty., of Saratoga Springs, N. Y.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The decision of this court in this case was announced at the conclusion of the argument. We at that time, however, stated that we might later file a written opinion, giving our reasons for concluding that the judgment should be affirmed. This we now proceed to do.

The plaintiff in error, hereinafter referred to as the defendant, was on February 15, 1921, convicted of a violation of section 3, title 2, of the National Prohibition Act of October 28, 1919 (41 Stat. 308), otherwise known as the Volstead Act. He was sentenced to pay a fine of $400 and to stand committed to jail until the fine was paid. Whether the Prohibition Law can be effectively enforced by imposing small fines, or even large fines, instead of jail sentences, upon those who are convicted of violating its provision, is a question for the trial judges themselves to determine, and they are clothed with a solemn responsibility in connection therewith. The question is one upon which this court expresses no opinion, as it is one which we are without authority to review. It is a trite saying that it is absolutely essential to the preservation of the social system in a civilized state that the laws of the land should be enforced. The responsibility for this enforcement rests, not alone upon jurymen and prosecuting officers, but in a large measure upon judges as well. It is perhaps unnecessary to observe, what the judges very well know, that the sentences which they impose, within the limits of their discretion, should be sufficiently severe to deter and restrain would-be violators of law from incurring the risk involved.

The defendant was convicted under an indictment filed October 19, 1920, which contained a single count reading as follows:

"That on the 23d day of September, 1920, at Marcellus, N. Y., within the jurisdiction of this court, Edward J. Dillon did willfully and unlawfully have in his possession and under his control certain intoxicating liquors, to wit, 17 gallons of whisky, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

It was indorsed:

"Violation Sec. 3, Title 2, N. P. A. Possession of Distilled Spirits—A true bill."

The indorsement according to our decision in Maresca v. United States, 277 Fed. 727, constituted no part of the indictment.

The material portions of the National Prohibition Act, so far as it is necessary to consider them in this connection, may be found in the margin.[1]

In his charge to the jury the District Judge took occasion in an admirable manner to impress them with the duty which rests upon all juries called upon to pass upon violations of this law. A portion of that part of his charge may be found in the margin.[2] The charge, therefore, is that the defendant, on September 23, 1920, willfully and unlawfully had in his possession and under his control, at Marcellus, N. Y., 17 gallons of whisky.

The statute (section 33) declared that after February 1, 1920, the possession of liquors by any person not legally permitted under the act to possess liquor "should be prima facie evidence that such liquor is kept for the purpose of being sold, * * * given away, furnished,

[1] Section 3, first paragraph, reads as follows: "No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Section 33: "After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner within ten days after the date when the Eighteenth Amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used." 41 U. S. Statutes at Large, p. 305, part 1, c. 85.

[2] "This law that has been recently passed for the enforcement of this amendment is a part of the law of the land, and as deeply imbedded in our institutions as a law passed concurrently with the foundation of the government. It is entitled at your hands, at the hands of all courts and of good citizens, to the highest respect, as much respect as any other law, and it is your duty as citizens and your especial duty as jurors, when called upon to pass upon such a case, to enforce this law equally with all laws. It is not for you, nor me, nor any other individual citizen, no matter how high placed officially he may be, to question the wisdom of this or any other law. It is only for us to enforce the law. We did not make it. But our representatives, duly chosen in accordance with our institutions, did make it. It is for us to obey and enforce the law, and not quarrel with it, and not set up our individual convictions or prejudices against it. That is not good citizenship. The test of good citizenship, gentlemen, is an enforcing, equally, of the laws for all people, regardless of race, creed, sex, or condition. And so you are not to concern yourselves with whether you like this law or you don't like it. You are only to concern yourselves with ascertaining whether this defendant has violated this law and if you are satisfied, beyond a reasonable doubt, that he has violated the law, you have but one duty, and that is to say that he is guilty. But if you are not satisfied, beyond a reasonable doubt, that he has violated the law, then you have but one duty, and that is to say that he is not guilty."

279 F.—41

or otherwise disposed of in violation of the" act. As the liquor was in defendant's possession on September 23, 1920, his possession was subject to the act.

[1] In the course of his charge the District Judge used the following language:

"Now you have heard this case. The court's opinion is that the defendant is guilty of the crime charged. In a federal court the court may inform the jury what his opinion is of the guilt or innocence of the defendant, but I want you to understand the question of his guilt or innocence is solely for the jury to decide. It is not for the court. The court has no part in deciding the guilt or innocence of the defendant, but the court may, if it seems desirable, inform the jury of his opinion. Now, gentlemen, you will take this case. You have a duty, a public duty, to perform, to decide this case upon your oaths and your responsibility; to decide on your conscience; to decide whether or not this man had whisky unlawfully in his possession."

The defendant insists that this deprived him of his constitutional right to a jury trial; that it was in effect a direction of a verdict of guilty, and made a jury trial an idle and useless ceremony. He relies upon certain cases to some of which we shall now refer.

In Breese v. United States, 108 Fed. 804, 48 C. C. A. 36, the Judge told the jury "that, in his opinion, it was the duty of the jury to convict the defendant." A new trial was granted, on the ground that it was calculated to mislead the jury, who might have construed the language as a direction on the part of the court to find the defendant guilty. So in Cummins v. United States, 232 Fed. 844, 147 C. C. A. 38, the judge told the jury that the evidence was legally conclusive against the defendant. A new trial was granted, as the court might as well have directed a verdict against the defendant, and did in so many words.

In Rudd v. United States, 173 Fed. 912, 97 C. C. A. 462, the defendant was charged with having used the mails to defraud. He was endeavoring to make sales of a patented machine. The defendant admitted at the trial that the machine was impracticable, and the prospectus untrue, but claimed that he did not know it at the time. The judge impressed upon the jury that any man with the slightest degree of intelligence above insanity would know that the machine was impracticable. He afterwards withdrew the statement, and told the jury the question was for them. A new trial was granted, and it was said that the remarks of the court might have led the jury to believe that a finding for the accused would have subjected them to ridicule.

In Sandals v. United States, 213 Fed. 569, 130 C. C. A. 149, it was claimed that some portions of the instructions were such as to prevent the jury from exercising a free and independent judgment, and the appellate court shared in that view of the matter, and directed a retrial. But in doing so the court quoted with approval a statement by Judge Hook in the Rudd Case, supra, in which he said:

"We do not mean to impair in any degree the right of a trial court in both civil and criminal cases to comment upon the facts, to express its opinion upon them, and to sum up the evidence, for that is one of the most valuable features of the practice in the courts of the United States. A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done. But his comments upon the facts should be judicial and dispassionate,

and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment."

These cases are all of them clearly distinguishable from the case now before us. In the cases referred to the judge had encroached unduly upon the province of the jury, but this was not done in the instant case, in which the jury could not have been misled, and was properly informed that the question of guilt or innocence was one solely for the jury to decide. It is true that in a criminal case a court cannot direct a verdict of guilty, and that it cannot do indirectly what it has no power to do directly. The court cannot direct a verdict of guilty, although no fact is in dispute. United States v. Taylor (C. C.) 11 Fed. 470; Atchison, etc., Ry. Co. v. United States, 172 Fed. 194, 96 C. C. A. 646, 27 L. R. A. (N. S.) 756. But, whatever the rule may be in the state courts, it is well-established law, which this court has no right or inclination to depart from, that in the federal courts the trial judge is entitled to express his opinion upon the facts and the guilt or innocence of the accused, provided the jury is given unequivocally to understand that it is not bound by the expressed opinion of the judge.

This court has held in a number of cases that a District Judge has the right to express his own opinion of the facts to the jury. Soblowski v. United States (C. C. A.) 271 Fed. 294; Johnson v. United States (C. C. A.) 270 Fed. 168; Oppenheim v. United States, 241 Fed. 625, 629, 154 C. C. A. 383; Hart v. United States, 84 Fed. 799, 28 C. C. A. 612. See, to same effect, Menefee v. United States, 236 Fed. 826, 150 C. C. A. 88; Perkins v. United States, 228 Fed. 408, 142 C. C. A. 638; Shea v. United States, 251 Fed. 440, 446, 163 C. C. A. 458; cert. denied 248 U. S. 581, 39 Sup. Ct. 132, 63 L. Ed. 431; Morse v. United States, 255 Fed. 681, 682, 167 C. C. A. 57; Savage v. United States (C. C. A.) 270 Fed. 14, 21; Keller v. United States, 168 Fed. 697, 698, 94 C. C. A. 368; Smith v. United States, 157 Fed. 721, 732, 85 C. C. A. 353; Kettenbach v. United States, 202 Fed. 377, 120 C. C. A. 505. The decisions of the Supreme Court are to the same effect. Horning v. District of Columbia, 254 U. S. 135, 139, 41 Sup. Ct. 53, 65 L. Ed. 185; Allies v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91; Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Andersen v. United States, 170 U. S. 481, 18 Sup. Ct. 689, 42 L. Ed. 1116.

[2] It is assigned for error that the court charged the jury that the defendant's possession of the liquor was unlawful, he not having reported it within 10 days. The court charged as follows:

"Now, this law provided that, if any person had liquor in his possession at the time this law went into effect, he might keep the same and use it for his own personal, private, lawful purpose, provided he obtained a permit, provided he reported it within 10 days after the passage of the act to the appropriate official, the collector, or deputy collector, or proper officer. Now, that 10-day period would have expired, as I recall it, in the month of January, 1920—at least, not later than the 10th of February, 1920. Any person, except in his own private home, who had liquor after the 10th of February, or such prior day as it was, and the exact date is not important, was required by law to report the same in the manner that I have stated.

"Any person, therefore, after that date, who had liquor in a place other than his private home, and who did not have a permit, or had not reported

it and was no one of the class of people, like druggists, who may dispense w.th liquor, on doctor's prescriptions and otherwise, any person not in any of those classes, who had liquor in his possession, has it unlawfully in his possession. Now, a hotel keeper, on the 23d day of September, 1920—and a hotel is not a building occupied exclusively for dwelling purposes—any hotel keeper who has liquor in his possession subsequent to a date, not later than February 21, 1920, who has not reported it to the United States government officials, and has not obtained a permit therefor, has such liquor unlawfully in his possession."

At the close of the charge counsel for defendant requested the Judge to charge:

"That if the defendant purchased this liquor in 'May, 1919, for his own consumption and use, and not with intent to sell, deal in, or barter the same, and if he did not sell or deal in or barter the same, that then he had it lawfully, and the jury must acquit him."

This the court declined to do and said:

"I refuse to charge in those words. I charge the jury that, regardless of the possession and the purposes of his acquisition in May of 1919, or whenever it was acquired, the possession is unlawful if, within 10 days after the passage of the National Prohibition Act, he does not report the whisky, unless it is contained in a building occupied exclusively as a dwelling, and his hotel was not such a building."

He also charged as follows:

"But, whenever he got the whisky, he had it unlawfully at the time of this affair on September 23d, unless you are satisfied that he had it. not for the purposes of sale, but for his own private and personal use, and upon that the burden is upon the defendant, and he must satisfy you by the greater weight of evidence on that subject. If you are not satisfied, then your duty is to find him guilty. If you are satisfied, he has satisfied you that he never had any whisky in this place for sale, and he did not sell it to anybody, he did not keep it there for sale, that he had it there exclusively for his own private, personal use, in such case you may find him not guilty."

The defendant excepted to what was charged as respects the unlawful possession of the liquor. But we can see no error in the charge as given, and think it correctly stated the law. The statute provided, in express terms, which have been set forth in an earlier part of this opinion, that it should not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling *only,* and that such liquor need not be reported, *provided* such liquors are for use only for the personal consumption of the owner thereof and his family residing in *such* dwelling, and of his bona fide guests when entertained by him *therein,* and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used. It is admitted that the defendant had the liquor in his possession, and there was evidence that the liquor was in a place which cannot be regarded as used exclusively as defendant's private dwelling house, but was behind the bar in a saloon maintained in a public house or hotel; that men stood in front of the bar, and had before them glasses, which contained or had contained whisky, and that a bottle containing whisky was behind the bar. As the statute expressly put upon the defendant the burden of proving that the liquor was lawfully possessed and used by

him, the objection to the particular part of the charge above referred to was clearly without merit.

In the argument in this court the defendant placed great reliance upon Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548. In that case the court, construing the National Prohibition Act, declared that it indicated no purpose to confiscate liquors lawfully owned when it became effective, and which the owner intended to use in a lawful manner. The liquors were held in storage in a warehouse of the safe deposit company in good faith, for the purpose of preserving and protecting them until they should be consumed by the owner and his family or bona fide guests. They were not being kept for sale or barter, or other commercial purpose. The facts of that case are entirely different from those in the case now before the court.

Under the charge in the instant case the jury could not have convicted the defendant, if they had not been satisfied upon the evidence that defendant had the liquor in his possession in a place other than his private dwelling and for other purposes than his own or his family's or his guests' use.

[3] It appears that after the case was closed the defendant moved to strike out the evidence of the government and dismiss the indictment upon the ground that no warrant had issued, the contention being that under the Fourth and Fifth Amendments the defendant's rights had been violated. The motion was denied and an exception was duly taken. The Fourth Amendment provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The portion of the Fifth Amendment which we understand the defendant deems applicable to this case declares that:

"No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

The defendant's position on this phase of the case was not clearly set forth at the argument or in the brief. But as we understood his position it was that as no search warrant had issued there was no right in the officers to take possession of the liquors which they seized. The facts as to the seizure seemed to be as follows:

The defendant was the owner and proprietor of a hotel in the village of Marcellus, a town of 1,000 inhabitants about 12 miles from Syracuse. In the hotel was a public barroom, in which people were accustomed to drink. In the rear of the bar was a pool room and in the rear of the hotel and within the curtilage thereof was a shed, which the defendant testified had once been an icehouse, but which he stated had not been used for ice in some years.

This building was about 30 by 40 feet, and in it was a little room 8 by 12 feet which he called a cold storage room.

On September 23, 1920, prohibition enforcement agents went into the hotel and bar, a public place, and found there three persons standing at the bar. The defendant was behind the bar. Before two of the men were two small whisky glasses. In one of them was an amber-colored fluid, which one of the officers put his finger into and tasted, satisfying himself that it was whisky. He then took the glasses into his possession, and stepped behind the bar, and took possession of a quart bottle partly filled with whisky. He then asked the defendant if he had any objections to their searching the house, and he replied that he had not. He was asked whether he would accompany them, and he replied, "Certainly; I will show you through anywheres." Thereupon the defendant got his keys and took them through the hotel, but found nothing until they went into the "icehouse." They found in the little room in the icehouse jugs containing 17 gallons of intoxicating liquor, containing in excess of ½ of 1 per centum of alcohol, which were seized and confiscated. It is conceded that the liquor seized was whisky.

It may be conceded that a government agent has no right to enter a private house to search for liquors without a search warrant. But in this case they did nothing of the kind. They entered a public bar of a hotel, where people were free to come and free to go. The officers had the same right to enter that the public had. They found men drinking at the bar what appeared to them to be whisky, and what the evidence shows was whisky. It appeared that liquor was kept on the premises and used contrary to law, and that a misdemeanor was being committed in their presence.

In Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, decided by the Supreme Court on February 28, 1920, the officers went to the defendant's house in his absence and informed his wife that they had come to search the premises for violation of the revenue law. The wife admitted them, and they made a search of the house and shop, and found liquor in both, which they seized. The constitutional rights of the defendant were held to have been infringed, and that the wife, in admitting the officers to her house, acted under "implied coercion," and did not waive her husband's rights. They had no warrant for his arrest, and no search warrant to search his house. In Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, decided on February 28, 1921, the officers gained admission to the defendant's office in his absence, without warrant, and under the pretense of making a friendly call upon him, and seized and carried away several documents. The seizure, under the circumstances, was held to be a violation of the defendant's constitutional rights.

In both of the cases above referred to the officers entered in the defendant's absence and made the search without his knowledge or consent. Their original entry on the premises was wrongful. In the case at bar the entry of the officers into the public barroom cannot be regarded as having been unlawfully made, and after they saw the liquor on the premises, and the unlawful possession of it by the defendant, they asked defendant if he had any objections to a search of the house

and would accompany them in such a search, and he assented. We are unable to see that the search violated his constitutional rights.

The officers had the right to avert a criminal act, either by arresting the doer or seizing and retaining the instrument of the crime, which in this case was the whisky. See United States v. Borkowski (D. C.) 268 Fed. 408. In Ex parte Morrill (C. C.) 35 Fed. 261, 267, the court, after stating that an officer might arrest for a crime committed in his presence, laid down the law as follows:

"In other words, a crime is committed in the presence of the officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe, or reasonable ground to suspect, that such is the case. It is not necessary, therefore, that the officer should be an eye or an ear witness of every fact and circumstance involved in the charge, or necessary to the commission of the crime."

And in Wiggins v. United States, 272 Fed. 41, 45, we stated our belief that, where liquors were being sold in violation of law, the officers, who witness the commission of the offense, have as much right to seize the liquors without a search warrant as they have to apprehend the wrongdoer without a warrant of arrest. We see no violation of any constitutional right of the defendant in taking possession of the liquors, which the defendant had in his unlawful possession and of which an unlawful use was being made in the presence of the officers.

The indictment did not charge a sale of liquor, but only unlawful possession of it, and it is said that the court erred in permitting evidence to be introduced to show that a sale of liquor was made. The defendant testified, in reply to questions asked by his own counsel, that he had the liquor for his own personal use; that he did not intend it for sale, and did not sell any of it to anybody. He also testified that he had made sales, but that what he sold was ginger brandy. The testimony introduced by the government showed that there was no ginger brandy on the bar, or around the bar; that a thorough search was made, and none was found. The government introduced no evidence of a sale, unless a sale might be inferred from the glasses on the bar, which the witnesses testified contained whisky. As not a single government witness pretended to say that a sale was made, the objection is without reason to support it.

The defendant's offense, as charged in the indictment, consisted in having unlawfully in his possession certain intoxicating liquors. The evidence in the record makes it clear that he had the liquors in his possession in a place and under circumstances which the law prohibited. There can be no doubt as to his guilt, and no doubt that he had a fair trial.

No error was committed, and the judgment is affirmed.