SACRAMENTO SUBURBAN FRUIT LANDS CO. v. PARKER et al.

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

No. 5680.

'Butler, Van Dyke & Desmond, of Sacramento, Cal., and Arthur C. Huston, of Woodland, Cal., for appellant.

Ralph H. Lewis and George E. McCutchen, both of Sacramento, Cal., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This case belongs to the same general class as Sacramento Suburban Fruit Lands Co. v. Melin, 36 F. (2d) 907, just decided.

In the charge to the jury, concerning knowledge on the part of the defendant that the representations made were false, that the defendant intended that the plaintiff should rely and act upon them, and that the plaintiff did rely and act upon them, the court said:

"It must appear by the greater weight of the evidence that the defendant knew that one or the other, or both of those representations were false, or you cannot hold it liable, or if you find that it ought to have known it, or did it make this assertion positively which is equivalent of knowledge in the eyes of the law. If it did not know it, why shouldn't it have known it? It had handled these lands and dealt with them for twelve or fifteen years before. They had all the knowledge of those years in that subdivision. They had experts in their employ, horticulturists as well as others. Why didn't they know? They knew what was in the soil, or could have known. They knew what the land would produce, or could have known. Should not they have known before they go and sell it to people away down East, who knew nothing about the land? Moreover, they made the assertion positively. The witnesses for the plaintiffs, and the plaintiffs themselves, say that this agent said the land is well adapted to commercial orcharding. When you make positive statements, not qualified, the law holds you liable, if they are false. So if you believe from the greater weight of the evidence that the defendant knew those representations were false, or should have known it, or made them positively, as I have said, the plaintiffs' case is thus far made out, and you proceed to the next step.

"Did the defendant make them with the intent that the plaintiff should rely on them? What did they make them for? What does a merchant issue advertising for? What does he send an agent out for, except to persuade prospects that what he is telling them is true, and that he is telling it to them for the purpose of bringing them in as prospects? That is only common sense. The law is common sense. Of course, the defendant intended whatever it said in this book, and whatever was said by its agent was intended to influence and persuade the plaintiffs to believe it and to induce them to enter into the bargain. There could be no other more reasonable conclusion than that.

"If you find that to be true, then the plaintiffs' case is made out so far, and then you proceed to the next step: Did the plaintiffs believe it? They say they did. Why shouldn't they? They were dealing with a corporation having a great deal of land. You can assume that it was a large corporation selling it, representing it to be of value for certain things. California, a great state, magnificent

resources; they were living down in Iowa. They were made to be believed by the Reverend Swenk, and by the book. Why shouldn't they believe it? Why shouldn't we believe that plaintiffs believed it? They say they did believe it. They say they relied on it and were induced by it to make the bargain. They sent out their husbands to see the land. They were coming under the influence of the representations, of course. You have heard evidence detailing the extent of the view. I think they said they were on two of these lots. There are four lots. They were on two of them once or twice, on an inspection of the surface. How much would that advise them? They went out with Mr. Braughler perhaps twice, once or twice. You will remember how many times. They were easterners. They knew nothing of California land, if it was adapted to fruit or if it was not adapted to fruit. It is not a matter that is open to casual inspection as to what food elements are in the soil, or how deep was the soil, or where lay the hard-pan, or the texture, quality, or character of the hard-pan, or how deep it was. You can see they did not get very much knowledge by merely looking over the surface of the soil. That is all that was done, according to them, and according to Mr. Braughler. They still would have the right to believe what the defendant and its agents had told them, and still rely on their statements. The facts could be assumed to be well within the knowledge of the defendant. They accepted the defendant's representations as true. Their casual inspection would not deprive them of the right to recover in this case, or deprive them of the right to rely upon those representations; if in such circumstances the plaintiffs still believed the representations and relied upon them, and thereby were influenced in whole or in part to buy the land their case is made out and they are entitled to recover."

That these instructions were improper and highly prejudicial does not, in our opinion, admit of question. In large part they state no rule of law for the guidance of the jury, and were not a fair and impartial comment on the testimony, as that term is generally understood. The instructions are argumentative in the extreme, and abound in questions suggesting their own answers. Starr v. United States, 153 U. S. 614, 14 S. Ct. 919, 38 L. Ed. 841; Rudd v. United States (C. C. A.) 173 F. 912; Sandals v. United States (C. C. A.) 213 F. 569; Weare v. United States (C. C. A.) 1 F.(2d) 617; Lewis v. United States (C. C. A.) 8 F.(2d) 849; Cook v. United States (C. C. A.) 18 F.

(2d) 50; Sacramento Suburban Fruit Lands Co. v. Melin, supra. A majority of these cases were criminal, but the right to a fair and impartial trial by jury extends to civil cases as well.

The appellees contend that the exceptions to the instructions were insufficient. It will be conceded that the exceptions were very general, but we are inclined to deem them sufficient, especially in view of the fact that the errors in giving the instructions were of such a nature that the court was powerless to correct them. Rudd v. United States, supra.

Other errors specified in the brief relate to rulings which will probably not occur on a retrial, or are disposed of by our opinions in other cases belonging to the same class, so that, without either approving or disapproving the rulings complained of, the judgment is reversed, with instructions to grant a new trial.