**UNITED STATES v. SMITH et al.**
· No. C–27797.

District Court, E. D. New York.
Dec. 22, 1930.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Emanuel Bublick, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff.

Galitzka & Finkelstein, of New York City, for defendants.

BYERS, District Judge.

Motion to preclude the United States attorney from using as evidence intoxicating liquors seized in the home of the defendant Smith on October 2, 1930.

Three police officers called at the premises on the day in question, and found Smith outdoors, cleaning his automobile; Officer Connelly swears that he visited the place on the complaint of a fire hazard, the structure being a two-story frame dwelling.

The pertinent recitals in the affidavit are as follows:

"I walked up to the defendant and asked him whether he occupied the premises, and he said he did. I told him we were Police Officers, and had a complaint of a fire hazard in the form of a still. He said, 'I have no still in the house. You can go right in and look through the place if you want to.'

"The wife of the said defendant led the way into the house, and I and the other two officers followed her. We went through the cellar first, being led through the premises by the said Mrs. Smith. * * * "

This affidavit was verified on the day that the motion was argued, and is more circumstantial than the officer's testimony before the commissioner.

The rest of the house was searched and, in a closet in a bedroom in the rear of the second floor, a very considerable quantity of assorted liquors was found, comprising well over one hundred quarts. Ensuing conversation with Smith and the defendant Fields revealed that the latter owned the liquor, and stored it in the Smith residence, and paid the rental of the house; and that Fields removed liquor from and brought liquor to the house at various times.

If one were to surmise that Fields is a bootlegger, using the Smith residence as his warehouse, perhaps his opinion would not be wide of the mark.

The question presented, as to the legality of the search, depends upon whether Smith not only acquiesced therein, but actually invited it.

Having in mind only the testimony of Connelly before the commissioner, which merely states a conclusion, namely, that he

was "invited" in to search, without a statement of the conduct on which the invitation was thought to be predicated, the search would be difficult of justification. Resort being had to the affidavit, the difficulty is removed.

If it be urged that the affidavit was prepared in the office of the United States attorney, for the purpose of meeting the motion, and therefore should be weighed in the light of professional zeal to succeed, the answer is found in the probabilities of the case.

Smith knew that he had no still, and hence was willing to invite an inspection which would vindicate him in reference to the alleged fire hazard, and probably made the statement attributed to him. That he may have been misled by the police officer as to the latter's mission, is equally probable, from what subsequently occurred.

In the belief that Smith invited the search, and that, as between the evasion of the law to which he was lending his assistance, on the one hand, and the artifice or deception, if such there was, on the part of the police officers, on the other, clearly this court should not take sides on this motion.

The facts and circumstances warrant the belief that the defendant Smith invited the police officers to search, which, within the authorities, is sufficient for present purposes. See Dillon v. U. S. (C. C. A.) 279 F. 639, and citations thereof.

Motion denied.