## WEISFLOG et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1923.)

No. 6074.

1. Witnesses ⚖=344(2)—Owner of cattle claimed to have been stolen held subject to impeachment by showing sales in fraud of mortgagee.

On trial for larceny of cattle, which defendants claimed to have purchased from the owner's agent, where the government relied largely on testimony of the owner and the agent, defendants should have been permitted to show that the owner had been secretly and in fraud of a mortgagee, disposing of the cattle.

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Witnesses** &larr;**345(I)—Subject to impeachment by showing conviction of felony.**

By calling a witness the government vouched for his credibility, and asked the jury to believe him, and, if he had been charged and convicted of a felony, defendants were entitled to show that fact.

**3. Criminal law** &larr;**1170(I)—Restriction on impeachment of government witnesses held to deprive defendants of fair trial.**

On trial for larceny of cattle which defendants claimed to have purchased from the owner's agent, where the government relied largely on testimony of the owner and the agent, exclusion of evidence designed to show that the owner was selling cattle secretly to defraud mortgagee, and that agent had been convicted of felony, *held* to deprive defendants of fair and impartial trial.

**4. Criminal law** &larr;**1166½(12)—Court's remarks in ruling on evidence and in charge held prejudicial.**

On trial for larceny of cattle, the court's remarks during introduction of evidence that fact that owner had said he was sorry he made the complaint was not inconsistent with his testimony, and was not impeachment, and that the fact that defendants were after him to withdraw the charge did not impeach, and remark in charge as to whole outfit needing a disinfectant, and that perhaps they ought to be behind the bars, *held* prejudicial.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Arthur Weisflog and another were convicted of larceny, and they bring error. Reversed.

Robert C. Hayes, of Deadwood, S. D. (Oliver M. Walcott, of Valentine, Neb., and John T. Heffron, of Deadwood, S. D., on the brief), for plaintiffs in error.

E. D. Barron, Asst. U. S. Atty., of Sioux Falls, S. D. (S. W. Clark, U. S. Atty., of Redfield, S. D., and P. J. Tscharner, Asst. U. S. Atty., of Rapid City, S. D., on the brief), for the United States.

Before LEWIS, Circuit Judge, and POLLOCK and SYMES, District Judges.

POLLOCK, District Judge. This was a prosecution for larceny of cattle from an Indian reservation under the jurisdiction of the government. Plaintiffs in error, Arthur Weisflog and Dale Green (hereinafter called "defendants"), and one Joseph Griffith, were indicted in two counts; the first count charging them with the crime of larceny of a herd of cattle, specifically describing the same, with marks, brands, etc., of the alleged value of $60 each. The second count charges the same parties with the crime of stealing one heifer, specifically described, of the value of $60, from the same reservation, the Rosebud Indian reservation, in Ladd county, state of South Dakota. At the trial the case was dismissed as to Joseph Griffith and proceeded to a verdict and judgment of conviction and sentence of a year and six months in the federal prison as to the remaining defendants, Weisflog and Green.

That the errors of which complaint are most earnestly made may be rightly comprehended, a statement of the more important facts should be made. One Nollett was the owner of the cattle, the remnant

---

&larr;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of a larger herd, on which there existed a mortgage of some $14,000; the remainder of the herd being worth approximately $2,500 only. The cattle were in the actual charge of Joseph Griffith at the time they were driven from the ranch on the reservation by defendants. It was the contention of defendants they had traded Griffith two automobiles for the cattle they received; that the cattle were received at the ranch in the daytime and driven to a ranch leased by Weisflog that day. The next day the cattle were publicly driven to the city of Crookston, and were placed and remained in a pasture along a public highway in plain view of those passing. Fifteen head of the cattle were sold and delivered to a local butcher. Defendants at no time concealed their connection with the transaction, or the cattle which they claim to have purchased. Neither did they conceal the trade made for the cattle received, or what was given in trade. While denied by Griffith, it is affirmed by defendants, that Griffith assisted in driving the cattle from the ranch on which they were kept for Nollett on the reservation. It was a part of the contention of defendants at the trial that the owner, Nollett, was secretly with Griffith engaged in selling the mortgaged cattle without the knowledge or consent of the mortgagee. Considering the very great discrepancy between the amount of the mortgage and the actual value of the cattle, Nollett could have no monetary interest in the cattle.

While there are many assignments of error, but few need consideration. Nollett, as a witness for the government, after testifying quite positively he gave his agent, Griffith, no permission or authority to trade or sell any of the cattle in his possession, on cross-examination was asked:

"Q. You have a good deal of interest in this case, Mr. Nollett? A. Yes. Q. I will ask you if you know Mr. Joe Nation? A. No. Q. Do you know where he lives? A. Yes. Q. Where? A. El Paso, Tex. Q. He is the man who holds this $14,000 mortgage on your cattle? (Objected to by the government as not proper cross-examination.)

"The Court: Objection sustained. Exception saved.

"Q. I will ask you, Mr. Nollett, if it is not a fact that you had disposed of some of those mortgaged cattle? (Question objected to by the government. Objection sustained. Defendants excepted.)"

Again, Nollett, who had preferred the charge against defendants and Griffith, was asked if he had not stated he was sorry he had made the complaint and caused the arrest, to which he answered:

"No; I never said that I was sorry at all, or that I made the complaint to protect myself.

"By the Court: Of course, that may be entirely material. He may have felt that he had to make a complaint; for, of course, if he had a mortgage, he would have to do something to protect himself. That would be one good reason, at least, why he should protect himself. Nothing inconsistent in anything said upon the witness stand. Therefore it is not impeaching testimony.

"Q. I will ask you if you did not say to Fred Green, the father of Dale Green, near the end of March, in Crookston, 'I will go to Valentine, and see if I can withdraw the charge. Griffith is after me, and I know it'? A. No; I never said that.

"By the Court: That is not competent. These fellows were after him to get him to withdraw the charge. That was the natural thing for them to do. That is not testimony. You have developed that they were after

him to withdraw the charge. That don't impeach him as a witness. The only thing that is competent is for the purpose of impeaching, something inconsistent with what he said. There is nothing inconsistent in that."

As further shown by the record, he was asked on cross-examination as to making such a statement. This he denied. The same was submitted to the witness Arthur Weisflog, and declared by the court not proper impeaching testimony; the court stating the defendants must prove their innocence upon the facts.

In the examination of Joe Griffith, used as a witness by the government, the following appears in the record:

"Q. Have you ever been convicted for violating the laws of your country?"

This was objected to by the attorney for the government as not proper cross-examination. This objection was by the court sustained, and to this ruling the defendants duly excepted.

"Q. I will ask you if you were not convicted in the district court of Morrell county, Neb., in 1912 for grand larceny?

The attorney for the government objects to this question for the same reason.

"The Court: Objection sustained. (To this ruling excluding examination the defendants duly excepted.)"

The court, in its charge to the jury, employed this language:

"Now, it may be that this whole outfit here from down in that country needs a disinfectant. You are to consider this kind of evidence, though perhaps the whole outfit ought to be behind the bars; but you are to consider the kind of men that these defendants are. The kind of man this other, Griffith, is. Conditions that existed out there, and you are to review the whole situation in the light of the conditions as you find them, and draw the natural conclusion of reasonable men based upon your experience and your own good judgment," etc.

[1-3] While the record shows no objection was made and exception taken to this statement of the court by defendants at the time, yet under all the circumstances of the case there can be no doubt but that the remarks made by the court in ruling upon the evidence, as shown by this record and this excerpt from the charge, must have greatly prejudiced the jury against defendants' case. An examination of the brief and argument of the government discloses no attempt whatever on the part of counsel to justify the ruling of the court challenged in the brief of plaintiff in excluding the evidence above set forth, and much other evidence in the record, to which proper exceptions were duly saved at the time. If Nollett, the owner of the cattle mortgaged, had theretofore been selling and disposing of the same secretly, either direct or through his agent Griffith, he was violating the law and committing a fraud upon the mortgagee in so doing. If Griffith had been charged and convicted of a felony before he was placed on the witness stand by the government, surely the jury should have been so informed.

By the very act of calling him as a witness, the government was vouching for his credibility and asking the jury to believe him as a witness. The government was relying very largely for conviction on the evidence of Griffith and Nollett. It was therefore of the highest importance their past acts, if criminal, should be brought out to enable the jury to correctly judge of their standing as men and their cred-

it as witnesses. For the errors complained of we are of the opinion defendants did not have that fair and impartial trial to which of right they were entitled in one of our national courts of justice. A citation of authorities in support of this position would not imply lack of confidence in a self-evident proposition.

[4] As to the remarks of the trial court, while no exception was saved to the same, yet the same must have been very prejudicial to the defendants. In Starr v. United States, 153 U. S. 614, 14 Sup. Ct. 919, 38 L. Ed. 841, Mr. Chief Justice Fuller, delivering the opinion of the court, said:

"It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling."

In Rudd v. United States, 173 Fed. 912, 97 C. C. A. 462, the court said:

"But his [the judge's] comments upon the facts should be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment."

Reversed.