## SMITH et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 12, 1927.

No. 7501.

Criminal law ⊂⇒762(1)—Statement by judge in charge, of his belief as to which witness told truth, with his reasons, held argumentative, and prejudicial error.

Where the transaction in issue was simple, and the testimony as to what occurred was in direct conflict, with two witnesses on each side, none of whom were impeached, a statement by the judge in his charge that he believed a government witness, and proceeding to give his reasons, *held* not within the limits of legitimate judicial comment, but argumentative, and to constitute prejudicial error.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Criminal prosecution by the United States against Marcelle Smith and J. L. Ostrom. Judgment of conviction, and defendants bring error. Reversed and remanded.

John T. Harley, of Tulsa, Okl., for plaintiffs in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl. (W. B. Blair, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

LEWIS, Circuit Judge. In this case plaintiffs in error, Marcelle Smith and J. L. Ostrom, were convicted and sentenced to imprisonment in the penitentiary on an indictment which charged them with having one pint of whiskey in their possession at the Terminal Hotel in the town of Slick in Okfuskee County, Oklahoma, said town being within and a part of the Indian Territory prior to the admission of Oklahoma as a state. The only claimed error, to which attention need be given, is directed to a part of the court's instructions to the jury; and to decide the point a short statement of the evidence is necessary: Fred Farrar, a narcotic agent, and Oma Smith, a narcotic addict, testified that they went to the Terminal Hotel and Farrar proposed to Marcelle Smith, proprietress of the place, that he would purchase some whiskey, that thereupon Marcelle sent Ostrom out to get the whiskey, that Ostrom returned shortly with a bottle of whiskey and handed it to Marcelle, that Farrar then gave Marcelle $2, she handed the bottle to him, he passed it around and several persons present each took a drink.

Marcelle testified that she did not know anything about the whiskey until she went into the lobby or reception room and found there a party composed of Farrar, Oma and others drinking whiskey, that Farrar said he had sent a boy called Smithy out for the whiskey, that her complaints about such conduct in her place broke up the party and they all left the hotel in a few minutes. She further testified that she had no whiskey there, never kept any there, never sold any, never delivered or sold any to Farrar and he never paid her $2.

Ostrom testified that he had been drinking for several days, that during the morning of the day in question he wanted a drink and found the place locked where he had been buying whiskey, that he inquired for Smithy and some one told him he might find Smithy at the Terminal Hotel, that he was not stopping at that hotel but immediately went there looking for Smithy. Farrar and Oma came in after he arrived and they wanted whiskey, and some of the party asked him if he could get it. He said he thought he could and went back to the place where he had been buying and found it still locked. He returned to the hotel and when he got there Smithy came in with the bottle, he took the bottle from Smithy, passed it around to the crowd and they all drank. He did not think Marcelle was there at the time. He did not hand the bottle to her and he did not see any one pay for it or any money pass. These were all of the witnesses to the claimed transaction. None of them was impeached. There was not much choice between them. Ostrom admitted that he had

been on a spree for a week. Farrar admitted that he had been going about with Oma for several days buying and drinking whiskey, and Marcelle testified she saw him drunk on the street which he denied. Oma was a drug addict. There was square conflict and contradiction—two against two. The liberty of the citizen was at stake. The court instructed the jury:

"Now, gentlemen, the way this evidence strikes me, these people were in the whiskey business down there at this hotel, that is the way the evidence appeals to me. You may view it entirely different; that is a matter for you to determine. This man, Ostrom, this defendant admits, as I remember his testimony, that he had this pint of whiskey, as I remember, he says he took it out of a man by the name of Smith's hand and that he passed it around. The charge in this case is unlawful possession of intoxicating liquor. This defendant, Marcelle Smith, denies specifically any connection with the whiskey, or any knowledge of it, except she saw some drinking there in the room and ordered them out of the room. That is her statement and her contention in the case. I believe this witness Farrar told you the truth; that he went there and bought some whiskey just like he said he bought it. You may not agree with that view of the testimony. The reason I make that statement, I have seen nothing in the testimony to indicate any ill will or malice of this witness against the defendant Marcelle Smith, and it does not appeal to me as being reasonable he would say and state that he went in there and suggested to her he would like to have a pint of whiskey, and that she might have had some kind of conversation which he didn't hear, with the defendant Ostrom, and he retired for a few minutes, brought back a pint of whiskey, handed it to Mrs. Smith and Mrs. Smith delivered it to him and he paid her for it, if that wasn't the truth. This other witness that admits she had been employed in some way by the government officials, Mrs. Smith, and admits that she was an addict of narcotics, states she suggested to Farrar that they go get some whiskey up there, that they were selling whiskey up there at the hotel. I am inclined to believe, gentlemen, that that was the fact, that they were selling whiskey up there, that this defendant, Mrs. Smith and Ostrom were the ones that was conducting the business of selling whiskey."

We think this was error, because argumentative. Of course the jury would return a verdict of guilty if they believed the testimony of Farrar. The court not only told the jury it believed Farrar told the truth, but it gave the reasons of the court for that belief; it argued that question to the jury, a subject especially for the jury's determination. The court put the pressure of its views and conclusion as to the weight to be attached to Farrar's testimony on the side of the prosecution, in a case in which the facts were not complicated, nor voluminous nor difficult of determination by one even of moderate intelligence. The power and even duty of the court to marshal the facts and comment on them with fairness to both sides is not doubted. It is a helpful function in the administration of justice, but it can be abused, and because of abuse it may be restricted or taken away, as has been proposed. We would like to see it retained, because of its helpfulness when the exercise of the power is applied with fairness in cases which reasonably call for it. Where the facts are complicated or voluminous a jury may be greatly aided to correct conclusions by a résumé, and by calling their attention to the proof bearing on the different controverted questions; and this may be done without directly or indirectly indicating what verdict should be rendered. It is said that the judge is not a mere moderator, that he must see to it there is no miscarriage of justice; but with equal truth it may be said that jurors have an important and independent duty, they are not to be led by their noses, nor by argument persuaded to accept the court's estimate of the facts. Every juror in this case must have known that the court fully expected them to return a verdict of guilty, as much so as if they had been expressly directed to do so. Unless there be recognized and enforced limitations to this power then our cherished heritage has become an idle dream: "No freeman shall be taken or imprisoned or disseised or any ways destroyed, nor will we pass upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land;" a fundamental principle and right which we thought we had preserved in the Constitution itself.

The subject was learnedly discussed by the Chief Justice in Starr v. United States, 153 U. S. 614, 14 S. Ct. 919, 38 L. Ed. 841. After stating that in the federal courts the presiding judge may sum up the facts to the jury, if in his discretion he thinks proper to do so, and that it had been held that an expression of opinion on the facts by the court in the cases cited was not error; it was then said: "As the jurors are the triers of

facts, expressions of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments." An excerpt from instructions to a jury in another case was quoted with approval, thus: "I hold it the privilege of the jury to ascertain the facts, and that of the court to declare the law, to be distinct and independent. Should I interfere, with my opinion, with the testimony in order to influence your minds to incline either way, I should certainly step out of the province of the judge into that of an advocate." And then the Chief Justice, as an admonition to a cautious exercise of the power called attention to the great deference given by a jury to the lightest word or intimation of the court.

But, as in all other instances, those who are invested with power are prone, perhaps unconsciously, to extend it; and so, believing it was being unjustly exercised, Congress but recently seriously proposed that it be restricted or withdrawn. We also have repeatedly condemned the practice. Weare v. United States, 1 F.(2d) 617; Cook v. United States, 14 F.(2d) 833; Barham v. United States, 14 F.(2d) 835; Lewis v. United States, 8 F.(2d) 849; Rudd v. United States, 173 F. 912; Weisflog v. United States, 291 F. 339; Cook v. United States, 18 F.(2d) 50.

Reversed and remanded.